F. B. DONISTHORPE ET AL., APPELLANTS, V. FREMONT, E. & M. V. R. CO., APPELLEE.

[FILED JULY 9, 1890.]

1. **Right of Way**: REPRESENTATIONS OF INTENDED USE: PAROL EVIDENCE. Where the agent of a railway company negotiating for the right of way for the proposed road across certain lots on which the plaintiff resided, stated to him that the property sought for right of way was designed for the main line and not for side tracks, and thereupon the plaintiffs executed a deed for such right of way. Afterwards three side tracks were laid along said line past the plaintiff's residence. *Held*, That the purpose for which the deed was executed might be shown.

2. ——— : ——— : DAMAGES. That if the plaintiffs sustained special damages by reason of the construction and operation of the side tracks near their house, they may recover for any excess of damages over those which would arise from the operation of the main line.

APPEAL from the district court for Fillmore county. Heard below before MORRIS, J.

*F. B. Donisthorpe*, and *Robert Ryan*, for appellants, cited as to fraudulent representations of intended use of land: *Barber v. Lyon*, 15 Ia., 37; *Richardson v. Bleight*, 8 B. Mon. [Ky.], 584; *Rumph v. Abercrombie*, 12 Ala., 64; *Wyche v. Greene*, 16 Ga., 49; *Walker v. Hunter*, 27 Id., 331; *Hileman v. Wright*, 9 Ind., 126; *Woodruff v. Water Power Co.*, 10 N. J. Eq., 489; *Abbott v. Abbott*, 18 Neb., 505; Bishop, Contracts, sec. 665; *Clark v. Tennant*, 5 Neb., 556; *Carpenter v. R. Co.*, 9 C. E. Green Ch. [N. J.], 249.

*John B. Hawley*, and *J. Jensen*, contra, contending that the deed embodied all agreements between the parties, and that their rights could not rest partly in writing and partly in parol, cited: *McClure v. Campbell*, 25 Neb., 58–9; *Mar-*

*shall v. Gridley*, 46 Ill., 250; *Purinton v. R. Co.*, Id., 297, 299, 300; *Waldron v. R. Co.*, 55 Mich., 420; *Druse v. Wheeler*, 22 Mich , 442, 443; *Cedar Rapids, etc., R. Co. v. Boone Co.*, 43 Ia., 45; *Conwell v. R. Co.*, 81 Ill., 232; Pierce on Railroads, p. 133, n. 2; 520.)

MAXWELL, J.

This action was brought by the plaintiffs against the defendant to abate certain stock yards near their residence as a nuisance and to enjoin the defendant from using certain side tracks near their residence for the same cause; or, in case an injunction would not be granted, then to recover damages.

On the trial of the cause the court below granted an injunction in effect abating the stock yards, but found for the defendant as to the side tracks, and rendered judgment accordingly. Other matters were presented to the court below which do not seem to be involved in the issues before us and therefore will not be considered. No appeal has been taken from the judgment abating the stock yards, so that the only question presented for consideration is the correctness of the judgment as to the right of way.

It appears from the record that in the spring of 1887 the defendant was anxious to extend its road to Geneva and beyond, and after various conferences with the citizens of Geneva they entered into a written guaranty that the right of way from " the east line of the northeast quarter of section 36, township 7 north, of range 3 west, of the sixth principal meridian, and for station grounds at Geneva certain lots and alleys, and a portion of Lincoln street in said Geneva" should not cost to exceed $13,500; that one Stanley was the right of way agent of the defendant and he exhibited to the plaintiffs a map purporting to show the line of the road through the town of Geneva and across their lots. He stated in effect that the side tracks would not extend to the plaintiff's place, and evidently

relying upon this assurance the citizens of the town made similar statements. The B. & M. R. R. runs south through the tier of blocks next west of the plaintiff's residence, the side tracks, however, being some distance away. The testimony shows that the wife of F. B. Donisthorpe, one of the plaintiffs, stated that if she could be assured that the side tracks of the defendant would also be placed away from near their residence, she would execute the deed as desired. Upon securing such assurance she thereupon with her husband executed a deed as follows:

"This indenture, made this 8th day of April, A. D. 1887, between Frederick B. Donisthorpe and Laura V. Donisthorpe (his wife), in her own right, of the county of Fillmore, in the state of Nebraska, party of the first part, and the Fremont, Elkhorn & Missouri Valley Railroad Company, a corporation duly organized under the laws of the state of Nebraska, party of the second part, witnesseth:

"That whereas the said Fremont, Elkhorn & Missouri Valley Railroad Company, party of the second part, is now constructing a railroad, which said railroad is to pass through the county of Fillmore, in said state of Nebraska, and the said party of the first part, being desirous of the construction of said railroad and to aid the same by the grant herein made, in consideration of the premises and the sum of $750 to them in hand paid, the receipt whereof is hereby acknowledged, have given, granted, bargained, sold, conveyed, and confirmed, and by these presents do give, grant, bargain, sell, convey, and confirm, to the said party of the second part, and to its successors and assigns, forever, for the purpose of constructing a railroad thereon, and for all uses and purposes connected with the construction and use of said railroad, a strip of land fifty feet in width, being fifty feet in width on west side of the center line of said railroad where the same has been definitely located over and across lots 15, 16, and 17, in W. J. Tate's first addition to the village of Geneva, Fillmore county, Ne-

braska, of the sixth P. M., and the said party of the first part, for the consideration aforesaid, do hereby release and discharge the said party of the second part, its successors and assigns, from all costs, expenses, and damages which the said party of the first part has now sustained, or shall at any time hereafter sustain, in any way by reason of the construction, building, or use of the said railroad; to have, hold, and enjoy the lands above conveyed, with the appurtenances and privileges thereto pertaining, and the right to use the said land and material of whatsoever kind within the limits of the said fifty feet above conveyed, unto the said party of the second part, the Fremont, Elkhorn & Missouri Valley Railroad Company, and to its successors and assigns, forever, for any and all uses and purposes connected with the construction, preservation, occupation, and enjoyment of said railroad; *Provided,* That if said railroad shall not be located and graded within ten years from the date hereof, or if, at any time after said railroad shall have been constructed, the said party of the second part, its successors or assigns, shall abandon said road, or the route thereof shall be changed so as not to be continued over said premises, the land hereby conveyed and all rights in and to the same shall revert to the said party of the first part, their heirs and assigns.

"And the said party of the first part do for themselves, their heirs, executors, administrators, and assigns, covenant and agree to and with the said party of the second part, its successors, and assigns, that they are the true, lawful, and rightful owners of all and singular the above granted and described premises, and every part and parcel thereof, with the appurtenances, and are now lawfully seized and possessed of the same as a good, perfect, and absolute estate of inheritance in fee simple; and that the same or any part thereof at the time of signing and delivery of these presents are not in any manner incumbered; and also that the said party of the first part and their heirs will and shall

10

warrant and forever defend all and singular the lands and premises hereby conveyed unto the said Fremont, Elkhorn & Missouri Valley Railroad Company, the said party of the second part, its successors and assigns, forever, against the lawful claims and demands of all and every person and persons, free and discharged of and from all manner of incumbrances whatsoever.

"In testimony whereof, the said party of the first part have hereunto set their hand the day and year first written above.                    F. B. Donisthorpe.

                    "Laura V. Donisthorpe.

"Signed and delivered in presence of

    "Jno. D. Carson."

Upon the construction of the line, three side tracks were built by the defendant, which extend beyond the plaintiff's residence, and such residence being so near the side tracks is greatly affected by the switching of cars thereon. As there must be a new trial to ascertain the amount of damages which the plaintiff has sustained, and as no question is involved as to the rule for estimating the damages, we will not discuss that branch of the case.

The attorneys for the defendant insist that the deed merged all prior conversations and statements of the parties and therefore the plaintiffs cannot now complain, as there is no reservation in the deed. This is true, but notwithstanding the rule, the purpose for which the deed was made may be shown. (*Collingwood v. Merchants Bank*, 15 Neb., 121.) This rule is constantly applied where an absolute conveyance is made as security for a debt. In such and like cases the entire transaction may be shown in order to determine the effect of the conveyance. So in the case at bar. Here the professed purpose of the agent was to obtain a conveyance of the right of way for the line of the road—not for depot grounds and side tracks. It is well known, too, that the grounds required for a station and the consequent side tracks are usually much wider than along

the line of the road away from the station. This, however, is a mere circumstance, which to have any weight must be supported by other circumstances showing that the company usually required more than 100 feet in width for side tracks at its stations. While every reasonable facility should be given a railway company organized under the laws of the state to acquire the right of way, and to construct its road, yet the land and lot owners over which its line is located have rights in the premises which must be considered and protected, and the damages which they each sustain by reason of the location, proper construction, and careful operation of the road must be paid or deposited with the county judge. Justice and fair dealing require that a fair compensation be paid, and that there shall be no secret reserve in favor of the party acquiring the right of way. The side tracks having been constructed, an injunction will not be granted, but the plaintiffs will be entitled to recover damages for the injury sustained in excess of those which arise from the proper use of the principal line of the road.

The judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.