(92 South. 254)

### ALGER–SULLIVAN LUMBER CO. v. UNION TRUST CO. et al. (3 Div. 539.)

(Supreme Court of Alabama. Jan. 19, 1922.)

**I. Deeds ⬤⟻94, 99 — Ordinarily deed merges contract; in view of recitals in a deed of trust subsequent to conveyance, held that the court should look to contract, trust deed, and deed in arriving at parties' rights.**

Ordinarily, in the absence of fraud or mistake, when a contract to convey has been consummated by execution and delivery of a deed, the contract becomes functus officio, and the deed becomes the sole memorial of the agreement; however, where a deed of trust between the parties subsequent to the conveyance reiterates the relevant stipulations of the contract, in arriving at the rights of the parties, the court may look to the three instruments.

**2. Covenants ⬤⟻93 — Term "failure of title" used in contract held to mean either total or partial failure.**

In conveyance of a large tract of land providing per acre rates for settlement in case of "failure of title," *held* that the term "failure of title" means either a total or partial failure.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Failure.]

**3. Covenants ⬤⟻140—Purchaser's recovery of purchase money works rescission and estops purchaser from setting up deed.**

Recovery of purchase money works a rescission, and if the purchaser recovers damages for breach of the covenants of seisin or on the ground that the vendor had no title, it estops the purchaser from afterwards setting up the deed of conveyance against the grantor.

**4. Covenants ⬤⟻38—Purchaser's right to an unbroken tract held merged in agreement fixing per acre value in settlement on failure of title.**

Purchaser's right to have his land in one unbroken tract was merged into an agreement that each acre would be valued at a fixed sum for purposes of settlement in case of failure of title.

**5. Covenants ⬤⟻107—Purchaser held not entitled to total purchase price without offering to return land on partial failure of title.**

Where a conveyance provides for a refund of the entire purchase money in the case of "each acre of land the title to which shall fail," meaning prima facie at least a total failure, purchaser was not entitled to recover the entire purchase price for partial failure without offering to return the land.

**6. Covenants ⬤⟻124 — On partial failure of title, measure of damages held to be diminished value because of incumbrances, notwithstanding provision as to value in case of failure of title.**

On demurrer to purchaser's bill for abatement of price, *held* that in case of incumbrances or defects less than total failure of title, purchaser was remitted to its remedy on the covenant unaffected by provisions as to value to be placed in settlement upon each acre for purposes of settlement in case of failure of title, and recoverable damages must be measured by the diminished value of the title conveyed on account of the incumbrance or defect averred.

**7. Covenants ⬤⟻116 — Purchaser's bill for abatement of price for failure of title held maintainable to recover for defects while retaining such title as received.**

On demurrer to purchaser's bill for abatement of price for failure of title to some of the land and for an accounting, though purchaser misconceives the proper measure of damages, it may maintain its bill to recover compensation for defects in the title while retaining such title, as it has received, where the bill supports such theory, especially where it is averred that defendants are nonresidents scattered through several states, an averment serving in a case of this sort all purposes of an averment of grantor's insolvency.

**8. Covenants ⬤⟻39—Purchaser's knowledge or opportunity to know of defects averred held not to prevent set-off.**

On demurrer to purchaser's bill for abatement of price for failure of title, the fact that the purchaser knew or had full opportunity to know the defects averred will not prevent the establishment of a set-off.

**9. Appeal and error ⬤⟻193(6)—Formal defect cannot be availed of where not taken in trial court.**

On demurrer to purchaser's bill for abatement of price for failure of title, an objection that in an action on covenant of warranty of title breach must be set forth with particularity, being a formal defect, cannot be availed of on appeal, where not taken in the trial court.

Appeal from Circuit Court, Conecuh County; John D. Leigh, Judge.

Bill by the Alger-Sullivan Lumber Company against the Union Trust Company and others for the abatement of the purchase of a certain land and accounting as to the amounts still due and the amount to be deducted therefrom, because of failure of title to some of the land. From a decree sustaining demurrers to the bill complainant appeals. Reversed and remanded.

The contentions as presented may be grouped as follows, and are set forth by demurrers, the first by demurrers G, H, and J:

"G. Because the bill fails to allege that either the title or possession of said lands or any portion thereof have been lost to complainant.

"H. Because the bill fails to allege that com-

plainant has been evicted from said land or any portion thereof."

"J. That it appears from said bill that at the time of the purchase of said lands or soon thereafter complainant had knowledge of said alleged defect in their title to said lands or a portion of same, and continued to hold the title and possession of same received from respondents, and complainant is now estopped from maintaining their bill."

The second by the. demurrers A, B, and F, as follows:

"(A) Because said bill fails to allege that the titles to said lands or any portion of same have failed.

"(B) Because said bill fails to show how or when the titles to said lands or any portion thereof have failed."

"(F) Because under the terms of the contract set out in said bill damages can only be recovered of respondent in the event title failed to said lands, and it is not alleged that the title to said lands or any portion thereof has failed."

The third is presented by demurrers C and I, as follows:

"C. Because there is nothing contained in said bill which would show that the title to the land or any portion thereof is any different now and when the same was purchased by complainant of respondents, and nothing contained in said bill shows that the title to said lands or any portion thereof have failed since the same was purchased."

"I. Because the bill fails to allege that at the time of the purchase of said lands complainant had no knowledge of the alleged defects in the title to said lands, and since said purchase and the execution of the deed conveying the said lands complainant has been evicted from said lands or there has been a breach of the covenants conveying the same."

The fourth is presented to demurrers D and E, as follows:

"D. Because said bill fails to allege that any person, or persons, own the said lands or any part other than the complainant.

"E. Because said bill fails to allege that any person or persons is or are claiming title to said lands, or any part or portion of said lands, other than the complainant."

Harry T. Smith & Caffey, of Mobile, for appellant.

The equity of the bill rests upon adequate grounds. 113 Ala. 372, 21 South. 75; 181 .Ala. 337, 61 South. 956; 107 Ala. 479, 18 South. 132; 170 Ala. 362, 54 South. 172; 162 Ala. 496, 50 South. 127; 89 Ala. 493, 7 South. 810; 96 Ala. 224, 11 South. 452; 118 Ala. 273, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160. A bill will lie for the specific performance' of the contract with abatement of the purchase price. 92 Ala. 309, 9 South. 252, 25 Am. St. Rep. 47; 34 Ala. 633; 211 Ill. 572, 71 N. E. 1097; 16 Ves. 7; 2 Devan, 302; 160 U. S. 182, 16 Sup. Ct. 258, 40 L. Ed. 383; 24 Colo. App. 118, 131 Pac. 803; 111

Ga. 346, 36 S. E. 796, 50 L. R. A. 680, 78 Am. St. Rep. 207; 219 Ill. 154, 76 N. E. 145, 2 L. R. A. (N. S.) 884; 144 Ill. 213, 33 N. E. 27; 162 Mich. 410, 127 N. W. 304; 226 Mass. 198, 115 N. E. 574; 261 Mo. 307, 168 S. W. 1154; 144 N. Y. 671, 39 N. E. 378; 151 N. C. 154, 65 S. E. 932, 134 Am. St. Rep. 982; (Tex. Civ. App.) 130 S. W. 244; 57 N. J. Eq. 600, 42 Atl. 278; 73 N. J. Eq. 617, 68 Atl. 758; (Tex. Civ. App.) 164 S. W. 44. The court erred in sustaining the demurrers constituting the first group. 201 Ala. 557, 78 South. 911; 106 Ala. 440, 18 South. 101; 87 Ala. 220, 6 South. 50; 100 Ala. 559, 13 South. 545; 181 Ala. 336, 61 South. 956; 172 Ala. 629, 55 South. 520; 84 Ala. 287, 4 South. 196; 4 Bibb (Ky.) 7; 144 Ga. 660, 87 S. E. 903; 100 Ga. 51, 28 S. E. 651; 114 Ind. 309, 16 N. E. 527; 178 Iowa, 231, 159 N. W. 672. It is settled that the measure of damages for a breach of covenant for a perfect title consists of the depreciation of the whole tract by reason of the defect in the title of any portion thereof. 197 Ala. 486, 73 South. 76; 79 Ala. 346; 100 Ala. 559, 13 South. 545; 106 Ala. 444, 18 South. 101; 117 Ala. 603, 23 South. 655; 79 Ala. 402. The court erred in sustaining demurrers A, B, and F. 106 Ala. 440, 18 South. 101; 87 Ala. 220, 6 South. 50; 101 Ala. 557, 14 South. 630; 100 Ala. 559, 13 South. 545; 202 Ala. 26, 79 South. 364; 31 Idaho, 568, 174 Pac. 129; 11 Ariz. 49, 89 Pac. 523; 181 Ala. 337, 61 South. 956. The court erred in sustaining demurrers C and I. 15 C. J. 1230; 100 Ala. 559, 13 South. 545; 181 Ala. 337, 61 South. 956; 198 Ala. 122, 73 South. 418; 86 Ala. 138, 5 South. 508. The court erred in sustaining demurrers D and E. 106 Ala. 440, 18 South. 101; 87 Ala. 220, 6 South. 50; 201 Ala. 557, 78 South. 911; 100 Ala. 559, 13 South. 545. The language of the contract in this case, however, is very explicit upon this matter. The phrase "adverse claim" does not import the assertion of the claim, but merely an outstanding right, whether the adverse claim is being actively asserted or not. 78 Conn. 96, 61 Atl. 101; 10 Ala. 325; 202 Ala. 26, 79 South. 364; 31 Idaho, 568, 174 Pac. 129. A covenant for a perfect title is satisfied only by a title which is free from litigation or grave doubt, free of incumbrances, and deducible from the record. 87 Ala. 220, 6 South. 50; 181 Ala. 328, 61 South. 956. Must not be subject to mortgage. 16 Ohio St. 444; 139 Cal. 384, 73 Pac. 851; 87 Cal. 49, 25 Pac. 249, 681; 93 Cal. 288, 28 Pac. 1046; 31 Okl. 436, 122 Pac. 127; 134 Iowa, 381, 105 N. W. 155, 111 N. W. 981; 1 Cal. App. 701, 82 Pac. 1082; 97 Minn. 385, 107 N. W. 397, 4 L. R. A. (N. S.) 1170, 114 Am. St. Rep. 723. A perfect title must be free from litigation, palpable defects, or grave doubt, and deducible from the record. 20 Cal. App. 101, 128 Pac. 772; 93 Cal. 288, 28 Pac. 1047; 76 Cal. 177, 18 Pac. 262, 9 Am. St. Rep. 189;

86 Cal. 538, 25 Pac. 67; 3 Allen (Mass.) 27; 14 Allen (Mass.) 526; 31 Okl. 436, 122 Pac. 128; 44 Mo. App. 69, 77; Vendors and Purchasers, Century Digest, 238–244; Decennial Digest, Vendors and Purchasers, 128. Doubts must be resolved in favor of vendee. 31 Okl. 436, 122 Pac. 130. And he is not bound to accept any evidence beyond the abstract. 31 Okl. 436, 122 Pac. 130. Purchaser entitled to record title. 6 Cal. App. 410, 92 Pac. 315. (Tex. Civ. App.) 126 S. W. 292; 59 Or. 179, 115 Pac. 431; 252 Ill. 206, 96 N. E. 997; 210 N. Y. 156, 104 N. E. 126. Must be free of reasonable doubt. 51 Tex. Civ. App. 233, 111 S. W. 164; (Sup.) 121 N. Y. Supp. 750. Title must be free of litigation, palpable defects or grave doubts. 14 Cal. App. 309, 111 Pac. 757. An adverse claim, however, is one thing, and the assertion thereof is another, and the grantor who warrants that he has a perfect title, and covenants to perfect any defects therein, must perfect the title, regardless of whether the adverse claim is being actively asserted or not. 78 Conn. 96, 61 Atl. 101; 10 Ala. 325; 202 Ala. 26, 79 South. 364; 31 Idaho, 568, 174 Pac. 129.

Hamilton & Page, of Evergreen, and D. M. Powell, of Greenville, for appellees.

The court did not err in sustaining demurrers the bill and the judgment should be affirmed. 100 Ala. 553, 13 South. 545; 105 Ala. 149, 16 South. 723, 53 Am. St. Rep. 101; 128 Ala. 267, 29 South. 386, 86 Am. St. Rep. 136; 1 Stew. 490, 18 Am. Dec. 68; 20 Ala. 156; 30 Ala. 420; 55 Ala. 545; 56 Ala. 471; 56 Ala. 551; 85 Ala. 618, 619, 5 South. 334; 93 Ala. 254, 9 South. 359; 96 Ala. 564, 11 South. 649; 116 Ala. 278, 22 South. 514; 181 Ala. 336, 61 South. 956; 192 Ala. 344, 68 South. 888; 80 Neb. 438, 114 N. W. 636, 17 L. R. A. (N. S.) 1179; 17 Okl. 247, 87 Pac. 304, 21 L. R. A. (N. S.) 376.

SAYRE, J. The facts shown by the bill and exhibits may be stated as follows: Complainant, the Alger-Sullivan Lumber Company, an Alabama corporation, on May 25, 1911, entered into an agreement in writing with numerous nonresident persons, associated together as the Michigan Land Company, by which the Land Company agreed to sell, complainant to buy, at least 40,923 acres of timber land and the timber on at least 4,777 additional acres, "all acreage to be computed according to the government survey," lying in the counties of Butler, Conscuh, and Monroe, at and for the sum of $2,000,000, conveyance to be executed with full covenants of warranty. The Alger-Sullivan Company agreed to furnish, within 10 days, an abstract of title showing "all incumbrances upon and equities in said lands," and the Michigan Land Company reserved the right to withdraw from the contract in the event the title to more than 7,000 acres proved to be unmarketable. And it was agreed that "on account of the said purchase money" the Alger-Sullivan Company should, at the time of the execution and delivery of the contract, pay the sum of $25,000, and the further sum of $475,000 at the time of the execution and delivery of the conveyance, the balance to be evidenced by 1,500 bonds for $1,000 each, 150 of which were to become due and payable on August 1st of each year from 1913 to 1922, both inclusive, to be secured by a deed of trust to the Union Trust Company of Detroit. The contract provided as follows:

"And the parties of the first part [the Michigan people] do further contract, covenant and warrant, and by the conveyance to be executed under this contract shall warrant, that should the party of the second part, at any time, or from time to time, call upon the parties of the first part, by written notice addressed and delivered, or mailed to the president of the First National Bank of Lapeer, Michigan, to perfect the title to any part of the lands or timber which are the subject-matter of this contract, then the parties of the first part will, at their own expense, but using the name of the second part, proceed to perfect said title either by obtaining quitclaim conveyances or by appropriate judicial proceedings against all adverse claimants, all of whom shall be properly brought into court by due process. Should the parties of the first part fail, within a reasonable time, to so perfect said title to any part of said lands, then they shall forthwith refund to the party of the second part $45.76, with interest at five (5) per cent. per annum, compounded annually, for each acre of land to which notice to perfect the title has been given from which the timber shall not then have been removed, whether said acre be included in the lands the entire interest in which has been sold, or amongst the lands the timber upon which only is included, and five dollars ($5) with like interest for each such acre of land sold as to which the title shall fail but from which the timber shall have been removed by the party of the second part. The party of the second part shall not, however, suspend the cutting of timber pending the proceedings for the perfecting of said title, unless in some manner restrained or prevented from so cutting by judicial proceedings. But it is further provided that should the party of the second part ever be held responsible to third persons, or to the United States government, or the state of Alabama, in damages for the cutting of any of the timber from the lands to be conveyed to it, or any of the timber to be conveyed to it, then the parties of the first part will immediately refund to it all sums of money for which it may be held in damages in any form of action, and in whatsoever amount. The obligations provided for in this paragraph shall constitute a set-off against any obligation or liability under this contract, or upon any of the bonds to be issued hereunder."

And the following paragraph:

"And the party of the second part further contracts and covenants that it will, on the first

day of August, 1911 [when it was expected conveyance would be made], pay to the members of said Michigan Land Company the sum of six thousand two hundred and fifty dollars, which is in addition to the purchase money herein provided for."

On July 10, 1911, "for and in consideration of the sum of two million dollars ($2,000,-000)," the Michigan people executed and delivered a conveyance in fee simple of the lands, described in detail (but the description is not reproduced in the bill or exhibits), which were the subject of the agreement, including the lands referred to in the bill as of defective titles, with this covenant:

"The said grantors hereby covenant with the said Alger-Sullivan Lumber Company that we have a good and perfect unincumbered title in fee simple to all the lands, timber and rights of way herein above described, and a good and perfect right to convey the same to the Alger-Sullivan Lumber Company; and we do hereby further covenant that we will forever warrant and defend the same title unto the said the Alger-Sullivan Lumber Company, and its successors and assigns, against the lawful claims of all persons whomsoever claiming or to claim the same; provided, however, that this warranty is hereby so fixed and limited that the Alger-Sullivan Lumber Company may recover of the grantors hereunder on, and only in, the following amounts, viz.:

"For each acre of land the title to which shall fail, and the timber upon which shall not have been removed, the Alger-Sullivan Lumber Company may recover forty-three and 76/100 dollars ($43.76) with interest from the date hereof at five per cent. per annum, compounded annually, and for each acre of land the title of which shall fail, but the timber upon which shall nevertheless have been removed by the Alger-Sullivan Lumber Company, it may recover five ($5.00) dollars per acre, with interest at five (5) per cent. per annum, compounded annually. And should the Alger-Sullivan Lumber Company be held in damages for cutting any timber covered by this conveyance, either that upon the land to which the whole estate is conveyed, or the timber without the soil, then the Alger-Sullivan Lumber Company may recover under this warranty the full amount of such damages for which it shall have been held liable by reason of cutting said timber, with interest at five (5) per cent. per annum."

Here followed a similar provision to apply in the event the lumber company should be prevented by judicial proceedings from removing any of the timber.

And this further covenant:

"The grantors herein do further contract and covenant and warrant unto the Alger-Sullivan Lumber Company, should it at any time, or from time to time, call upon the grantors, by written notice * * * to perfect the title to any part or parts of the land or timber which are the subject-matter of this contract, then the grantors will, at their own expense * * * proceed to perfect said title, either by obtaining quitclaim conveyances or by appropriate judicial proceedings against all adverse claim-

ants," and the provision for damages is here repeated.

In the deed there is no reference to the sum of $6,250, mentioned in the preliminary contract.

September 30, 1911, the Alger-Sullivan Lumber Company executed its deed of trust to the Union Trust Company substantially as the parties had agreed, reciting the fact that:

It was executed "under a certain contract which has been entered into between the members of the syndicate known as the Michigan Land Company, whereby The Alger-Sullivan Lumber Company has purchased from the members of the Michigan Land Company a large body of lands which are included in this deed of trust"

—and incorporating the provisions of the contract having reference to the Michigan Land Company's refund for each acre of land as to which the title should fail. And this paragraph:

"It is further understood and stipulated, as one of the provisions of this deed of trust, that the bonds hereby secured are subject to the set-off and to the postponement of their payment in accordance with the terms of said contract as herein recited."

The bill, filed September 27, 1920, avers notice (in May, 1913) of "defects in the titles" of parts of the land conveyed, as provided in the conveyance, but without avail. Complainant avers that it is entitled, on account of such defective titles, to a reduction of approximately $138,522.91, and prays that such sum, or a sum to be ascertained, be deducted from the amount secured by the deed of trust and still unpaid, offering to pay the balance, if any, and prays that the outstanding bonds be delivered up and canceled, and for general relief.

Defendants' demurrer to the bill was sustained.

It is now insisted by defendants, in agreement with the demurrer filed in the trial court: (1) That since the limited covenants of the conveyance make no provision against liability except as to lands the titles of which have failed, the bill is demurrable for that it avers the titles to the lands, as to which relief is sought, to be defective only, and fails to aver either actual or constructive eviction under title paramount; (2) that complainant cannot resist payment of purchase money or reduce the amount thereof by set-off while remaining in possession; (3) that although, under the contract, complainant was furnished with an abstract of title, and had the option to withdraw in the event the titles to more than 7,000 acres proved to be unmarketable, complainant accepted the deed, and has remained in possession of the lands with alleged defective titles for more than 10 years; (4) that the limitation on the operation and effect of the covenants ex-

pressed in the deed were intended for application in the event only that title should wholly fail, and that, in the event of an incumbrance or other defect, not wholly destroying the value to complainant of the property thereby affected, the covenants were to operate with such effect as is assigned to them by law, i. e., without reference to the limitation. Some other grounds of objection to the bill are argued in the brief for defendants; but it has been found that essentially they depend upon defendants' contention that they are answerable under their limited covenants in the event only of a failure of title as contradistinguished from title merely defective.

[1] The deed of conveyance exhibited with the bill does not reproduce in full the stipulations of the contract on which complainant bases its right to a set-off, and, ordinarily, in the absence of fraud or mistake, when a contract to convey has been consummated by the execution and delivery of the deed, the contract becomes functus officio, and the deed becomes the sole memorial and expositor of the agreement between the parties, and upon it thereafter the rights of the parties rest exclusively. Frederick v. Youngblood, 19 Ala. 680, 54 Am. Dec. 209; Carter v. Beck, 40 Ala. 599; Winston v. Browning, 61 Ala. 80; Rogers v. Peebles, 72 Ala. 529; Clifton v. Jackson Iron. Co., 74 Mich. 183, 41 N. W. 891, 16 Am. St. Rep. 621; Slocumb v. Bracy, 55 Minn. 249, 56 N. W. 826, 43 Am. St. Rep. 499. There are cases in which stipulations of the preliminary contract, instead of becoming merged in the deed, survive and confer independent causes of action. 2 Devlin on Deeds (3d Ed.) § 850b. However the exceptional rule would ordinarily apply to the case in hand, the deed of trust executed between the parties subsequent to the conveyance to complainant reiterates the relevant stipulations of the contract, and for this reason, if no other, in arriving at the rights of the parties here involved, we feel it incumbent upon us to look to the three instruments.

[2] The sale and conveyance in this case, we infer, was by reference to the government survey; according to that survey the acreage was to be estimated, and the contract was for lands not less than 45,700 acres in the aggregate. The purchase price, for some purposes at least, was fixed at $43.76 per acre. This is sufficiently well shown by the language of all the writings and in particular by the terms of the conveyance used in limiting the effect and operation of the covenants of warranty. The purchase money of the entire body was the sum of $2,000,000. Appellant refers in brief to the stipulation of the contract for the payment of $6,250 as if that were a part of the purchase price. We are not given to understand on what account this payment "in addition to the purchase money" was made, but that it was not considered as a part of the sum paid for the land seems to be made reasonably clear by the identical recitals of the purchase price in both the contract and the deed and by the terms in which the covenants of warranty are limited. Indeed, the averment of complainant's bill is:

"That by the terms of the said contract it was specifically provided that the other parties to said contract would, for the sum of two million dollars, grant, bargain, sell and convey unto the Alger-Sullivan Lumber Company the lands and timber which are specifically described in the said conveyance."

The product of 45,700 divided into $2,000,000 is $43.76, and this last is the sum fixed upon by the parties as the proper refund or compensation for each acre the title of which should fail. This, of course, was no mere fortuitous coincidence; the damages were so fixed, we must assume, with a view to those established rules of law which are stated in Clark v. Zeigler, 79 Ala. 346; Prestwood v. McGowin, 128 Ala. 267, 29 South. 386, 86 Am. St. Rep. 136, and cases in that line. It seems reasonably clear that, to avoid the extreme difficulty and uncertainty of a just ascertainment of the compensation or refund to be paid in the event the title of relatively small tracts in so large a body of land should fail, involving a comparison between the values of the entire tract and the tract failing, the parties were agreed that the purchase price—for the purposes of the covenant and in the cases covered by the language of the limitation—should be distributed equally over the entire tract. To meet the exigencies of such cases at least the price per acre was fixed at the sum designated.

On the basis of the conclusion last announced defendants contend that the parties, having stipulated for damages per acre equal to the purchase price in the event of a failure of title—meaning, as they contend, total failure—it would be, not only highly inequitable, but a construction opposed to the language of the agreement, to lay upon them for every defect in title, trivial it may be or at most not destroying the value of the property to complainant, a weight of damages equal to the entire purchase price of the land so affected. Complainant's theory, on the other hand, is, to state it in brief, that a failure of title, within the meaning of the contract or covenant, includes incumbrances or defects short of total failure; that the parties were sui juris and competent to arrange their own contracts; that, if defendants did not care to answer for defects or incumbrances as for a total failure they had reasonable opportunity to perfect the titles affected thereby; and that defendants should be decreed to answer according to the terms of their covenant, that

is, $43.76 for each acre of timbered land, $5 for each acre from which they have removed the timber.

It is observed, of course, that the controversy between the parties depends entirely upon the interpretation to be given to the terms by which the covenant of warranty—or the contract to the same effect substantially—is limited. More narrowly stated, the divergent views in large measure hinge upon the meaning of failure of title. We have noted in a number of our cases that this court, not in the way of pointed decision, but rather as a matter of course, has made use of the term "failure of title" when speaking of a total failure, and that a total failure as to a specific part of the subject of sale, or a defect or incumbrance affecting the whole or a part thereof, is referred to as a partial failure. Clark v. Zeigler, supra, Copeland v. McAdory, 100 Ala. 553, 13 South. 545, and Anniston Co. v. Griffis, 198 Ala. 122, 73 South. 418, are examples. But "failure of title" in customary use, it may be conceded, means either total or partial failure, and this seems to be agreeable with available definitions.

Thus, 2 Bouvier Law Dict. p. 1179:

*"Failure of Title.*—The entire or partial loss of title suffered by a grantee or one who has contracted to purchase property, resulting from failure or inability of the grantor or vendor to pass a satisfactory title."

And Black's Law Dict. 472:

*"Failure of Title.*—The inability or failure of a vendor to make good title to the whole or a part of the property which he has contracted to sell."

[3] From a ruling that complainant is entitled to a set-off to the full extent of the figures nominated in the covenant in the case of incumbrances or defects short of total failure, it would result, in our opinion, that complainant's bill is defective, in that it fails to offer to surrender to defendants possession of the specific fractions of the land in question. The bill, as we have already stated, avers defects in parts of the lands which were the subject of sale. We assume, therefore, that complainant claims nothing as for a total failure of title as to those parts, and, as the demurrer points out, there is no averment of actual or constructive eviction under title paramount. Assuming the correctness of what has been said—involving, for one thing, the proposition that the parties have agreed to meet the contingency of any controversy arising out of the covenant or agreement, limited as it is—complainant's contention is, in short, that, retaining the land, it is entitled not only to have the defendants refund what has been paid to them on account of purchase money, but to pay to it the full amount fixed upon as the purchase money of each acre of land

and timber, or, if complainant has had the benefit of the timber, then the sum of $5 per acre. If we may, for the purpose of the question here involved, disassociate the case of these 8,560 acres, as to which complaint is made, from the larger body of land for which the parties contracted—and from what has been said it results that we must—the weight of injustice so sought to be laid upon the defendants would be obvious. However, a bargain is a bargain, and if the covenant means what complainant construes it to mean, complainant is entitled to the refund and compensation claimed. But if, as complainant contends, that is, if the covenant be construed as holding no distinction between defect and total failure, and so that for defects complainant is entitled to be paid the entire purchase money, still that construction cannot be allowed to set aside the rule, operating alike at law and in equity, that the vendee cannot have the land and keep the purchase money.

"There can be little doubt, on general principles, that equity would restrain a covenantee who had recovered back the consideration money from setting up, as against his covenantor, that title which by his action on the covenant he had asserted to be defective, and would probably decree a reconveyance by him." Rawle on Covenants (5th Ed.) § 185.

Recovery of the purchase money works rescission. Mackintosh v. Stewart, 181 Ala. 328, 61 South. 956. Many cases to this effect might be cited. Said Parker, C. J., in Parker v. Brown, 15 N. H. 188, quoted in the note to Rawle on Covenants for Title, § 184:

"If the grantee recovers damages for the breach of the covenants of seizin, on the ground that the grantee had no title whatever, the operation of it must be to estop the grantee from setting up the deed afterwards, as a conveyance of the land, against the grantor."

[4] The bill here is in substance an action for the recovery of purchase money. Complainant suggests that a different interpretation of the covenant and its limitation would deprive it of the benefits in its business to be derived from having its land in one unbroken tract; but, if our view of the covenant is sound, then complainant's suggested right —of which nothing is said in the contract or pleading—to bring into consideration the advantages of an unbroken tract, was merged into the agreement that for all purposes of the covenant each acre should be valued at a fixed sum. And without the covenant the consideration passing to complainant would have been the estate of the vendors, whatever that may have been, and the question of good or bad title would be wholly irrelevant. Rawle, §§ 321, 327. We speak here not of the effect of the statutory covenant, for no question as to that is involved.

[5] While the language limiting the operation and effect of the covenant is not as

specific as we would like to see it, still, in view of the fact that it provides for a refund of the entire purchase money in the case of "each acre of land the title to which shall fail"—meaning, as we think, prima facie at least, a total failure—we are at the conclusion that the parties intended that there should be a return of the total purchase money only in the event of a total failure of title, and in that event the purchase price of each acre should be estimated at the sums named. From this construction of the modified covenant and from the well-settled equitable principle heretofore stated, which operates at law and in equity (Rawle, § 184), which neither the body of the covenant nor its appendix affects, which, indeed, operates independently of covenants, and because equity operating in its own peculiar field would settle the entire controversy between the parties, it results that complainant should not, on the case stated, be awarded relief to the extent contemplated by the bill, without offering to return the land.

We have considered Purcell v. Lay, 84 Ala. 287, 4 South. 196, apparently stressed in the brief for appellant, without finding that it materially—if at all—helps complainant's case. There executors filed their bill to enforce a vendor's lien; but their testator had never had title to 40 acres, a part of the land, and there had been an agreement that the vendee should acquire the title and the vendor would reimburse him for all expenses thus incurred. So the vendee did, and the question raised by his cross-bill was whether he was entitled to an abatement equal to the full value of the 40 acres. The court ruled that the agreement had fixed the amount of the abatement to be allowed. We do not see that the case sheds any light on the controlling question here, viz.: What does the limitation on the covenant mean?

But it does not follow that complainant's bill is wanting in equity, nor that the specific grounds of objection must be sustained.

[6] It results from what has been said that in the case averred in the bill, the case of incumbrances or defects less than total failure of title, complaint is remitted to its remedy on the covenant unaffected by the limitation, and recoverable damages must be measured by the customary rule of law, viz. the diminished value of the title conveyed on account of the incumbrance or defect averred. Clark v. Zeigler, supra; Copeland v. McAdory, supra; Maxwell v. Sherman, 172 Ala. 626, 55 South. 520.

[7] In the case stated—and such the case is, though complainant misconceives the proper measure of damages—complainant may maintain its bill to establish a set-off, to recover compensation for defects in the title delivered to it, at the same time retaining such title as it has received. Manning v. Carter, 192 Ala. 307, 68 South. 909, and cases there cited. The bill is so framed that it may be supported on this theory. If more be needed to give it equity, as some of the older cases seem to require, such desideratum may be found in the averment that the defendants are nonresidents scattered through several states—an averment serving in a case of this sort all the purposes of an averment of the grantor's insolvency. Mackintosh v. Stewart, supra.

[8] Nor will the fact that complainant knew, or had full opportunity to know, the defects averred, prevent the establishment of the set-off. Copeland v. McAdory, supra; Anniston Co. v. Griffis, supra; Mackintosh v. Stewart, supra.

[9] The defendants cite Chestnut v. Tyson, 105 Ala. 161, 16 South. 723, 53 Am. St. Rep. 101, to the proposition that in an action on the covenant of warrant of title the breach must be set forth with particularity, or, as the rule is stated in Copeland v. McAdory, not with particular description of the incumbrance or defect, but substantially. This point was not taken by the demurrer, probably for the reason that in the bill complainant avers it had furnished defendants with a list showing the sections or fractional sections the titles to which were alleged to be defective, and naming the defects and offering to describe them more particularly in the bill, if deemed desirable by defendants. At any rate, the point was not taken in the trial court, and, being a formal defect, cannot be availed of in this court.

Our judgment, on the considerations stated, is that the decree sustaining the demurrer was erroneous.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.