**RIDLEY et al. v. MOYER.**

8 Div. 603.

Supreme Court of Alabama.

May 9, 1935.

Rehearing Denied June 6, 1935.

Kirk & Rather, of Tuscumbia, for appellants.

J. H. Nathán, of Sheffield, for appellee.

THOMAS, Justice.

This appeal is from a decree overruling demurrers to the amended bill.

It is averred, that on February 27, 1924, appellee purchased from appellants a tract of land consisting of 15 acres of land, to be subdivided into streets and lots. On the 6th day of March, 1924, the deed and mortgage exhibited were executed. The latter recited an indebtedness of $5,315.70, evidenced by three promissory notes as follows: One for $315.70, due July 6, 1924; one for $2,500, payable March 6, 1925; and the third for $2,500, payable on or before March 6, 1926, each note bearing interest from date, payable annually. It was stipulated in the mortgage securing same, that if the amounts due upon said notes "when the same respectively fall due" are paid, "then this conveyance is to become void, but on * * * failure to pay said notes or either of them as stipulated therein, in part or in full," or failure to "keep all taxes against said real estate paid, then or in either event above enumerated all of the indebtedness evidenced by this mortgage and still unpaid shall immediately mature and become due"; that "it is expressly understood and agreed that a strip Two Hundred and Ten (210) feet wide off the west side of said real estate shall be released at the rate of Seventy-five ($75.00) Dollars per lot according to the map and plan of said real estate."

It is averred that prior to the execution of the deed and mortgage negotiations were had between complainant and defendants for subdivision of the land into lots and blocks with streets and alleys, and thus enable complainant to offer the property for sale and in turn pay the balance of the purchase money for said tract; that for that purpose and with that end in view, defendants agreed as a part of the contract for the sale and purchase that a strip of said land 210 feet wide off the west side of said parcel, estimated to be 1,100 feet in length, be released from the mortgage to be executed by complainant upon payment to defendants of the sum of $75 per lot, said lots to be 50 feet wide and 145 feet in depth, and to be platted by complainant with a 50-foot street along the west, north, and south borders of said parcel, a 50-foot street dividing said 1,100-foot strip, and a 15-foot alley or driveway along the east border of said 1,100-foot strip, leaving 19 lots which were to be released by defendants from the mortgage to be executed by complainant upon payment of $75 per lot.

It is further averred that for the benefit of complainant and without affecting or intending to affect his rights to have these lots released from defendants' mortgage, according to the agreement between complainant and

defendants, complainant platted the lots as Fordson Park Terrace, each having a frontage of 35 feet and a depth of 100 feet; that complainant, on July 6, 1924, paid $315.70, with interest, and on March 2, 1926, he paid $1,900, at which time he demanded from defendants release of all the lots contained in the 210-foot strip off the west side of said parcel of land, which demand was refused as to any of said lots or any part of the 210-foot strip.

It is further averred that subsequent to the execution of this contract and mortgage, and the payment of said sums of money, complainant sold a number of the lots in the 210-foot strip and executed and delivered warranty deeds to the same, relying on the contract with the defendants that said lots so sold would be released from the mortgage; that on September 3, 1928, defendants foreclosed the mortgage and bid in the property, and on December 4, 1928, defendants "attempted to vacate the recorded plat of Fordson Park Terrace," etc.

The prayer was for the release of the lots in question from the mortgage, and for such general relief as complainant's "rights and equities may justify."

The amended bill sets forth the agreement of the parties for subdivision and release of the lots as follows: "The parties of first part have sold unto the said S. G. Moyer their 15 acres of land adjoining Warren Estate and others for $400.00 per acre. The said S. G. Moyer contemplates platting said land into city lots and the parties of the first part agree to release lots for $75.00 per lot on each and every lot in a strip 210 feet wide clear along West side of said land, said money paid to be applied of (on) first note due, $200.00 is hereby paid cash in hand, $600.00 additional to be paid when deed and abstract is delivered, which is to be delivered within 2 weeks from this date. The party of the second part is to give his personal note for $200.00 and mortgage on said land for $5,000.00, payable on or before one and 2 years from date of deed with 8% interest (even notes). Title to be a merchantable title."

As to this agreement, it is averred:

"* * * That by the terms of said contract herein referred to in this paragraph, it was provided that said 1100 foot strip, being one acre in width and 1100 feet in length, makes approximately 5 acres, which under the terms of said agreement, allowing 7 lots to the acre, would make 35 lots to said strip, and complainant alleges that with the understanding and agreement as herein set forth, defendants and complainant executed the instruments (the deed and mortgage) made Exhibits 1 and 2 to this Bill of Complaint. * * *

"That for the benefit of complainant and without affecting or intending to affect his rights to have said lots released from defendants' mortgage, in accordance with the said agreement that the lots to be released should be seven to the acre, containing approximately 6223 square feet, he platted the land as Fordson Park Terrace, each lot having a fronting of 35 feet and a depth of 100 feet, making the contents of each lot 3500 feet. But complainant claims that he has the right, upon payment of $75.00 per lot, to have as many lots as shown on said plat as Fordson Park Terrace released as the amount of money paid by him would release if each contained 6223 square feet. * * *

"And complainant alleges that because of the failure and refusal of defendants to make releases under the terms of said contract and mortgage, he was deprived of the right under his contract of making sales of any of the other lots in said parcel of land; that he has been greatly damaged by reason of the failure of the defendants to execute releases to the lots in this 210 foot strip, and has sustained great damage to his reputation and business character because of said default on the part of the defendants."

The prayer was amended to order a reference as to the number and which lots were sold; to ascertain the damages sustained by the complainant by reason of the failure of the defendants to make releases under the contract and mortgage; that upon final hearing, specific lots, paid for by the complainant at the rate of $75 per lot and embodied in the 210-foot strip off the west side, be required to be released from the mortgage; that the mortgage foreclosure be set aside and held for naught; and that the attempted vacation of the plat of Fordson Park Terrace be avoided and set aside, and damages be awarded for such amount as complainant is entitled to by reason of the failure of the defendants to carry out their contract to make the releases provided for.

The several grounds of demurrer, incorporated in the answer and raising the question for decision, are:

"(1) It appears there is no equity in the bill in this: Complainant lost his right to obtain releases of lots by failure to pay $2500.00 note before maturity.

"(2) Respondents' forbearance in the foreclosure of the mortgage and collection of his

debt by sale of the property did not extend the right of complainant to releases beyond the time contemplated when the mortgage was executed.

"(3) It does not appear respondents obligated themselves to release the strip 210 feet wide on the west side of fifteen acre tract of land for payments made after the maturity of the $2500.00 note due March 6, 1925."

The decree overruled the demurrers; hence this appeal.

It is declared that ordinarily, in the absence of fraud or mistake, when a contract to convey has been consummated by execution and delivery of a deed, the preliminary contract becomes functus officio, and the deed becomes the sole memorial of the agreement, and upon it the rights of the parties rest. But there are cases in which certain preliminary stipulations, such as are independent and collateral and not such preliminary agreement as would be merged in the conveyance, survive the deed and confer independent causes of action. Alger-Sullivan Lumber Co. v. Union Trust Co. et al., 207 Ala. 138, 142, 92 So. 254; Carter v. Beck, 40 Ala. 599; Frederick v. Youngblood, 19 Ala. 680, 54 Am. Dec. 209; 2 Devlin on Deeds (3d Ed.) § 850-b; 84 A. L. R. 1010, 1027, note. The purpose for which the conveyance is executed may be shown as illustrative of such exception. 2 Devlin on Deeds (3d Ed.) § 850-b; Donisthorpe v. Fremont, Elkhorn & Missouri Valley Railroad Company, 30 Neb. 142, 46 N. W. 240, 27 Am. St. Rep. 387.

Appellants thus condense their insistence as follows: "The original contract of purchase stipulated that there should be not less than seven (7) acres in the strip to be released. The mortgage * * * was the sole memorial and expositor of the agreement between the parties, left appellee at liberty to increase the number of lots to suit his purpose. He elected, as the bill shows, to divide the property so that there would be thirteen (13) lots to the acre. * * * He therefore brought about the condition that now exists which prevents him, under the language of the release clause in the mortgage, from claiming the release of the strip of five (5) acres." They further insist upon the provisions for acceleration of the mortgage debt for certain defaults in payment to be made in money on the dates indicated.

In Federal Land Bank of New Orleans v. Farris, 226 Ala. 574, 148 So. 123, the acceleration clause of the mortgage was for the benefit of the mortgagee, was not self-executing, and was no more than an option to treat the default as an act maturing the entire indebtedness. Watson v. Clayton (Ala. Sup.) 159 So. 481.

The provisions of the mortgage adverted to in argument of counsel, exhibited in the pleadings, and averred as being in default, may or may not become the subject of maturity of the debt, or waiver thereof, and upon which estoppel may rest, when adjudged by recognized rules that obtain in equity. Such contractual provisions, if duly insisted upon by the mortgagee, or if there is an estopping failure to act in the premises, are material questions of fact entering into the right of complainant or his vendees of the release of the lots sold, as specifically provided in the mortgage and in accord with the agreement between the parties and the first purchaser that they be platted and sold.

We agree with the trial court, that the case should be heard with all parties at interest represented and bound by the final decree. As between the mortgagor and mortgagees, their rights as such may be adjudicated without other proper parties. Hodge et al. v. Joy et al., 207 Ala. 198, 204, 92 So. 171. However, the several purchasers of the lots are not represented, though they may be made and are proper parties. Planters' Warehouse & Commission Co. v. Barnes et al., 229 Ala. 572, 159 So. 63; First Nat. Bank of Eutaw v. Barnes et al., 229 Ala. 612, 159 So. 68.

It was contemplated by the parties that the lands be subdivided, platted, and sold as lots after the mortgage was executed. This was accordingly done by the mortgagor, who changed the size and number of the lots located in the zones contemplated by the parties to be released on sale, from 7 to 13 lots per acre. This change in the platted area or lots, if well known to the mortgagee, and he allowed sales to be made with reference to such changed plat or survey, and accepted payment thereon from the mortgagor with knowledge of the fact, said mortgagee would be estopped and bound according to the well-recognized rules that obtain in a court of chancery. Such in effect were the holdings in the recent cases last above cited.

We wish to say further, that the extent to which complainant is entitled to relief, taking the averments of the amended bill as true, is to have the warranties in the deeds executed to the purchasers of said lots protected by a release from the mortgage and its foreclosure, when the purchase money has been paid and it or its equivalent is received by the mortgagee with knowledge of the facts of the platting and sale made as averred.

We are of opinion, and so hold, that the decree of the trial court in overruling the demurrers incorporated in the answer was free from error.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.