176 So. 299

## MOYER v. RIDLEY et al.

### 8 Div. 770.

Supreme Court of Alabama.

Oct. 7, 1937.

Jos. H. Nathan, of Sheffield, for appellant.

Kirk & Rather, of Tuscumbia, for appellees.

BOULDIN, Justice.

The bill is for the specific performance of a covenant or stipulation for the release of a specified portion of mortgaged lands, from a purchase-money mortgage.

The equity of the bill was upheld on appeal from a decree overruling demurrer to the bill as amended. Ridley v. Moyer, 230 Ala. 517, 161 So. 526, 528.

That decision states quite fully the case made by the amended bill, and sets out the written instruments relating to the transaction.

For present purposes it will suffice to note that an executory contract of purchase, setting out the terms in full, signed by the parties, accompanied by a cash payment, was entered into, stipulating for a further cash payment and the execution of a deed and purchase-money mortgage within two weeks. Such contract contained this release clause: "The said S. G. Moyer contemplates platting said land into city lots and the parties of the first part agree to release lots for $75.00 per lot on each and every lot in a strip 210 feet wide clear along West side of said land, said money paid to be applied to first note due * * * Lots to average at least 7 lots per acre in release strip."

A week later the deed and purchase-money notes and mortgage were executed. The release clause, as written into the mortgage, reads: "It is expressly understood and agreed that a strip Two Hundred and Ten (210) feet wide off the west side of said real estate shall be released at the rate of Seventy-five Dollars ($75.00) per lot according to the map and plan of said real estate."

Among other things the bill averred that complainant had made certain payments on the principal of the mortgage debt and had sold and conveyed lots in the 210-foot strip to purchasers, but the mortgagee, on demand, had failed and refused to release same. It was this feature of the bill which was held to contain equity, this court saying: "We wish to say further, that the extent to which complainant is entitled to relief, taking the averments of the amended bill as true, is to have the warranties in the deeds executed to the purchasers of said lots protected by a release from the mortgage and its foreclosure, when the purchase money has been paid and it or its equivalent is received by the mortgagee with knowledge of the facts of the platting and sale made as averred."

Thereafter, an amended answer was filed, incorporating a former answer, and denying that lots had been sold and conveyed as averred.

The evidence fails to sustain this feature of the bill. It developed that the lots actually sold and conveyed were in an adjoining tract bought by complainant from another party and platted in the same subdivision designated as "Fordson Park Terrace."

There was some evidence of negotiations for sale of some lots in this 210-foot strip, which failed because of a refusal of the mortgagee to release lots as requested. But this evidence fails to identify any particular lots, or to show any notice to the mortgagee of such pending sales with request to release such lots, or at what time such sales were in negotiation.

■ Appellant insists upon his right to relief on another feature of the bill and supporting evidence now to be considered.

As evidenced by the deed and mortgage consummating the deal the property sold was a rectangular parcel 1,110 by 600 feet, containing 15$\frac{35}{121}$ acres, the purchase price at $400 per acre being $6,115.70; $800 was paid cash. The balance, $5,317.70, was represented by three notes, one for $315.70, payable four months, and two notes of $2,500 each, payable one and two years from date, respectively, with interest. The small note was duly paid. By mutual agreement the first $2,500 note was extended another year, at the end of which the accrued interest on the debt was paid, and $1,500 on the principal, thus reducing the principal of the mortgage debt a total of $1,815.70. A right to a release of lots to the extent of such payments is sought to be enforced.

The 210 by 1,110-foot strip covered by the release clause, when platted as contemplated, contained 48 lots, as well as streets and alleys.

We are not impressed with the insistence of appellee that the release clause written into the mortgage so modified the preliminary contract, which was being consummated, as to limit the release to the entire strip as a unit upon payment of $75 per lot, aggregating $3,600 on the mortgage debt. This would defeat the evident purpose to promote sales of lots in this strip. It was contemplated sales could be made before maturity of the debt, upon payment of $75 per lot, to be credited on the first maturing note, the mortgage debt being thus reduced at least $525 per acre under the original contract, and a greater sum as the lots were later platted. If no release of lots as such were intended, there was no occasion to show a rate per lot. A fixed sum for the release of the whole strip would easily make clear the stipulation, if so intended.

On the other hand, we cannot concur in the view of appellant, that every time a payment was made on the purchase money notes at or after their maturity the mortgagor was entitled to select and withdraw from the mortgage a number of lots equal to such payment without regard to pending sales of such lots.

The dominant purpose of the release clause was to promote sales, to open the way, to sell specific lots, and make good title thereto by procuring a release from the mortgage upon reducing the mortgage debt at the rate of $75 per lot.

As indicated in our former opinion sums paid in regular course might be utilized to obtain releases to perfect a sale or sales. But we adhere to the holding expressed in the above-quoted excerpt that complainant's right to relief is limited to protection of titles to lots sold, and so protecting him on his covenants of warranty.

Otherwise stated, there was no intent to deplete the vendor's security, to withdraw from the mortgage scattered lots to be selected by the mortgagor, or by the court for him, every time a payment was made on the mortgage debt after maturity, thus vesting in the mortgagor titles to selected lots, to be held and disposed of by him at will. The release clause was inseparable from the dominant purpose to enable the purchaser to make sales of specific lots while the mortgage was still outstanding, upon payment of $75 per lot on the mortgage debt.

■ The bill was filed after default, and after foreclosure of the mortgage. The mortgagee having purchased at foreclosure sale, no right to release which had theretofore been perfected was cut off.

■ But, in our view, neither the release clause as written into the mortgage, nor as construed in connection with the preliminary contract and the entire subject matter, discloses the clear right to relief required in cases of specific performance. 17 Ala. Digest p. 573, § 28(1).

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.