93 So.2d 168

**Herbert G. ANDERSON and Horace Luker**

v.

**Ida MIZELL.**

**7 Div. 395.**

Court of Appeals of Alabama.

Feb. 19, 1957.

Dempsey & Hardegree, Ashland, for appellants.

Handy Ellis, Columbiana, for appellee.

CATES, Judge.

This is an appeal by the defendants, Anderson and Luker, from the Clay Circuit Court from an action by Mrs. Mizell for $2,500 damages from trespass to goods for

the wrongful taking of a house, a barn, a chicken house, and divers chattels such as household furniture, canned goods, a coaster wagon, school books, three churns, car parts, silverware, a banjo, and a guitar.

The complaint as amended is laid in two counts, the operative words of each being taken from Code 1940, Title 7, Section 223, Form No. 25, except Count Two has appended thereto "which taking by trespass and conversion was on to-wit: June 30, 1951." The defendants demurred, assigning among other grounds that it affirmatively appeared that the house, barn, and chicken house were real property and hence their taking could not be the subject of an action for asportation or trover or conversion, or both trespass and conversion. The demurrer also assigned the usual ground that the complaint failed to state a cause of action. The court overruled the demurrers; thereupon the defendants pleaded the general issue in short by consent with leave to give in evidence any matters otherwise admissible if well pleaded. This plea embraces the Statute of Frauds and Estoppel as defenses. Emergency Aid Ins. Co. v. Dobbs, 263 Ala. 594, 83 So.2d 335; Lackland v. Turner, 207 Ala. 73, 91 So. 877; Dancy v. Ratliff, 201 Ala. 162, 77 So. 688.

The jury returned a verdict in favor of the plaintiff and assessed her damages at $350. The defendants' motion for a new trial was overruled. Thence here with assignments of error.

The evidence for the plaintiff tended as follows:

August 30, 1950, Mrs. Mizell and her husband were living on the Bull Gap Road about one mile north of Hollins, Alabama, on 80 acres of land belonging to him. On that date the two of them signed and executed a full warranty deed, in self proving form, to "real estate", viz., NE¼ of NE¼, Sec. 8, and NW¼ of NW¼, Sec. 9, T. 22, R. 5, in Clay County, in favor of J. H. Luker. The granting clause read: "We, the said C. W. Mizelle (sic), also called Clifton W. Mizelle (sic), and wife, Ida Mizelle

(sic), do grant, bargain, sell and convey unto the said J. H. Luker", etc. The express warranties began: "We do for ourselves, our heirs, executors and administrators covenant with the said J. H. Luker, his heirs and assigns that we are lawfully seized in fee simple of said premises; that they are free from all encumbrances", etc. This deed contained no reservation or exception.

Mrs. Mizell testified that in 1934 she with her own funds had built the house, barn, and chicken house with the verbal understanding with her husband that they were hers to do with as she pleased. In this she was duly corroborated by her husband. About two weeks before the delivery of the deed, in a trading conversation, she had told Mr. Luker the buildings didn't go with the land, to which he assented by saying she could tear them down and move them or live in them, he didn't care how long she lived there.

We quote from the cross examination of Mrs. Mizell as to what happened preparatory to drawing up the deed to Mr. Luker:

"A. Mr. Luker told Mr. Dempsey, she can live there nine years but you can't cut a stick of timber or move it on that place, but you can live there.

"Q. In regard to reserving the house—A. He told him it is her house and he said, I am buying the land and timber.

"Q. What words did Mr. Luker use there at that time? A. He just said he was buying the land and timber from my husband and I reserved the house and was going to move it.

"Q. Who was present when that statement was made? A. Me and my husband and a colored man was in there; I don't know where the colored man is."

About a week after the delivery of the deed to Luker, the defendant Anderson appeared enquiring about the occupancy of the place by the Mizells. Mrs. Mizell testified he knew of the reservation as to

the buildings. Anderson took from Luker by warranty deed which contained no reservation or exception.

The Mizells had been building a place down in Coosa County. Meanwhile they remained in the Clay County house, going down on week ends to work on the new house. Some time about June 1951 the Mizells seem to have taken up residence at the new place, for Luker and Anderson paid them a visit trying to get the house in Clay. Luker offered Mrs. Mizell $300 for the house, which she refused. Two weeks later, about June 30, 1951, Anderson drove up with a pick-up truck. Mrs. Mizell saw her stove and studio couch on it. She came out of the house and told Anderson to carry the stuff back and put it in her house, i. e., the Clay County house. Anderson left and put the contents in the barn at the Clay County place. That evening Mr. and Mrs. Mizell went back up to it and got five beehives. Mr. Anderson had put up a "No Trespassing" sign, and some white people were living there.

Several months later (viz., January or February, 1952) Mrs. Mizell went back again and found most of the goods sued for gone, except those she saw Mr. Anderson have on the pick-up truck, i. e., the stove and a studio couch, the latter having had motor oil poured over it. There is no evidence that the defendants went into possession of the undisputedly personal property. There was no demand for or refusal of any of the enumerated property.

■ The evidence for the defendants was sharply contradictory of the plaintiff's; absent other considerations its weight and import presented a jury question.

The appellants assign as error (and argue in brief) the refusal of the trial court to charge the jury as follows:

"5. I charge you, gentlemen of the jury, that if any one of your number is not reasonably satisfied from the evidence in this case that the plaintiff is entitled to recover under her complaint you cannot find for the plaintiff."

■ The oral charge made no reference, express or fairly implied, to the requirement that the verdict must be unanimous. Had there been any such reference, the refusal would have been harmless. City of Birmingham v. Bowen, 254 Ala. 41, 47 So.2d 174; Green v. State, 263 Ala. 324, 82 So.2d 418. However, we construe the later cases not to have overruled Louisville & N. R. Co. v. Steverson, 220 Ala. 158, 124 So. 205, where unanimity is omitted altogether from the instructions (oral or written) otherwise given. Accordingly, we hold this refusal to be reversible error.

■ Since another trial will be required, we wish to point out other matters which will probably be necessary to consider. *First,* the evidence here failed to evince unlawful force, Cox v. Stuart, 229 Ala. 409, 157 So. 460. *Second,* trover was the more appropriate remedy, Harris v. Powers, 57 Ala. 139; Middleton v. Alabama Power Co., 196 Ala. 1, 71 So. 461; Dame v. Dame, 38 N.H. 429, 75 Am.Dec. 195. *Third,* what effect, if any, should be given to the Statute of Frauds embodied in the Sales Act, Code 1940, Title 57, Section 10? *Fourth,* since it appears that the facts in the record distinguish this cause from Clements v. Morton, 200 Ala. 390, 76 So. 306, consideration should be given to whether or not the agreement to sell with a reservation was merged into and rendered functus officio by the deed, Carter v. Beck, 40 Ala. 599; Alger-Sullivan Lbr. Co. v. Union Tr. Co., 207 Ala. 138, 92 So. 254; Burroughs v. Pate, 166 Ala. 223, 51 So. 978; Moorer v. Tensaw Land & Timber Co., 246 Ala. 223, 20 So.2d 105. *Fifth,* whether or not the covenants of the deed operated to estop Mrs. Mizell from asserting an interest in derogation of the grant, Lindsey Lumber & Export Co. v. Deas, 230 Ala. 447, 161 So. 473; Ruffin v. Crowell, 253 Ala. 653, 46 So.2d 218.

For the above error the judgment of the lower court is ordered reversed and the cause remanded.

Reversed and remanded.