[Bowles v. Lowery.]

# Bowles *v*. Lowery.

*Ejectment.*

(Decided April 15, 1913. 62 South. 107.)

1. *Adverse Possession; Color of Title.*—Color of title is a writing which in appearance purports to, but in reality does not, transmit title or the right of possession.

2. *Same; Extent of Possession.*—In the absence of color of title, title by adverse possession can be acquired only to the land actually occupied by the adverse claimant, or those through whom he claims.

3. *Same; Evidence; Definiteness.*—In the absence of bona fide claim under color of title, inheritance or purchase, the evidence which will authorize a recovery must furnish data from which actual possession of a definite, particular area may be ascertained; it cannot be left to speculation or conjecture.

4. *Same.*—Indicia of actual possession of a part or parts of a forty-acre tract, or of three acres thereof about a spring is insufficient, in the absence of evidence of possession of any particular part, or of the particular form of the three acres.

5. *Same; Notice; Statute.*—Since the passage of section 1541, Code 1896, one cannot acquire title by adverse possession without having filed the required notice, unless his entry was under color of title, bona fide claim of inheritance, or of purchase.

6. *Same; Instructions.*—That there may be an adverse possession there must in addition to the other elements be an exclusive possession; hence, an instruction asserting that if a plaintiff acquired actual possession of the land at a certain time and kept continuous possession, doing certain things for twenty-five years, this adverse possession will ripen into title, in failing to hypothesize that the act of possession was exclusive, was affirmatively erroneous.

7. *Executors and Administrators; Right of Widow; Ejectment.*—Where one acquires title by adverse possession, his widow as such, can maintain ejectment for it if it is so related to the place of his last residence as to make it subject to the widow's quarantine right.

8. *Deeds; Parties.*—Where no names of persons purporting to be grantors are set out in the body of the deed, the identity of the persons purporting to grant and convey is clear and certain where their names are signed at the appropriate place to the deed, and this is true as well with respect to the warranty and other features, although the pronoun "me" is employed in the acknowledgment of receipt of payment of the consideration, and the pronoun "I" in the granting clause and in the warranty and other features.

9. *Acknowledgment; Form.*—Only a substantial compliance with the form of acknowledgment by the statute is required.

[Bowles v. Lowery.]

10. *Same; Instructions.*—The acknowledgment and the deed are to be read together in construing the acknowledgment.

11. *Same.*—Where the certificate of acknowledgment read that "B., her heirs, whose name is signed to the foregoing conveyance and who is known to me, etc.," when taken in connection with the evidence that the other signers were all of the children of B., except the grantee, it is to be read with "and" between the word "B." and the words "her heirs," and with the word "are" in the place of the word "is" where it occurs, and hence, must be construed as a certificate of acknowledgment by all the grantors.

12. *Same; Clerical and Grammatical Errors.*—If what was intended to be expressed can be clearly seen, without resort to mere inference or conjecture, errors of a purely clerical or grammatical nature will not avoid a certificate of acknowledgment.

13. *Evidence; Parol Evidence; Intention.*—In aid of the interpretation of the acknowledgment, evidence that the signers of a deed, except the grantee, were all of the children of one of the grantors, is admissible; such evidence not contravening the rule against direct parol evidence of intention.

14. *Charge of Court; Misleading; Instructions.*—As to whether or not an instruction was calculated to mislead the jury, reference must be had to the evidence.

APPEAL from Fayette Circuit Court.

Heard before Hon. BERNARD HARWOOD.

Ejectment by Mary Lowery against John L. Bowles. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The facts sufficiently appear from the opinion. The following are the charges referred to in the opinion:

"If the jury is reasonably satisfied from all the evidence that plaintiff's husband acquired actual possession of the land sued for in 1871 or 1872, and that her husband kept continuous possession, claiming it as his own, cutting timber thereon, such as sawings, timber, firewood and cross-ties, and cleared a portion of said land and cultivated it continuously for 25 or 30 years, this adverse possession would ripen into a title, and plaintiff would be entitled to recover the land sued for, together with the reasonable rental value for its detention as shown by the testimony.

"(2) Under the evidence in this case the defendant, if he had any title to the land sued for, has only such title as he may have gained by adverse possession of the land, and he has no title by adverse possession unless he has for some 10 years together, without interruption, been in the notorious and exclusive possession of the land, in open hostility to all other persons claiming title to it."

"(7) The deed or instrument purporting to have been executed by the widow and heirs of the father of the defendant is not color of title, so far as the 40 acres in controversy is concerned, unless the jury believes from the evidence that the defendant's father has had actual possession of the same.

BEASLEY & WRIGHT, for appellant. Regardless of whether the deed from Mrs. Bowles and the other heirs was admissible as color of title only the defendant in this case was an heir of John Bowles, and clothed with all his right of possession.—157 Ala. 434. The words "I" and "me" used in the granting clause of said deed had reference to each individual signer thereof, and the deed passed the legal title.—69 Ala. 221; 132 Ala. 354; 39 South. 772; 154 Ala. 100; *Sloss-S. Co. v. Lollar,* 170 Ala. 239. The deed from the Bowles' heirs to defendant could be used even if the land was held adversely by plaintiff at the time said deed was executed. —168 Ala. 215. The widow was not entitled to recover from an adverse holder.—*Hayes v. Lemoyne,* 156 Ala. 465. By bringing ejectment, the widow admits that defendant was in possession, and having only an inchoate right of dower could not bring ejectment.— *Reeves v. Brooks,* 80 Ala. 26; *Steverson v. Allison,* 123 Ala. 439; *Hayes v. Lemoyne, supra.* Without filing the requisite notice, adverse holding could not ripen into

[Bowles v. Lowery.]

title after February 11, 1893. Charges 1 and 2 given for plaintiff were erroneous, as was charge 5.—*McCrary v. Jackson L. Co.,* 148 Ala. 247; *Same case,* 168 Ala. 209. The charges were also erroneous because the acts of ownership were over undefined portions of the land and could not constitute in law adverse possession to the whole of the land.—*Powers v. Hatter,* 152 Ala. 636; 157 Ala. 23.

LONDON & FITTS, for appellee. All the evidence that plaintiff contends for, even if admissible and credible, did not prove a legal conveyance of title.—*Bank v. Jones,* 59 Ala. 123; *Florence B. & I. Co. v. Shall,* 107 Ala. 531; *Jackson L. Co. v. McCrary,* 137 Ala. 278; The widow was in possession under her right of quarantine, and entitled to maintain this suit.—Sec. 3824, Code 1907. The acts of distinct trespass committed by defendant did not break the continuity of plaintiff's holdings.—*Bell v. Denson,* 56 Ala. 499; *Ladd v. Durbroca,* 61 Ala. 25; *Iron Co. v. Robinson,* 87 Ala. 436; 1 Cyc. 1010. The parol gift of this 40 acres of land to the elder Lowery was a sufficient definition of the extent of the subsequent holdings.—*Collins v. Johnson,* 57 Ala. 304; *Alexander v. Wheeler,* 78 Ala. 167; *Davis v. Davis,* 10 South. 70. Both plaintiff and defendant are claiming as purchasers and by inheritance, and hence, section 1541, Code 1896, is without application. A juror cannot be heard to impeach his own verdict.—*Clay's Case,* 102 Ala. 297.

MCCLELLAN, J.—Statutory ejectment, by appellee against appellant. The tract sued for contains 40 acres, described by government subcall of that area. The plaintiff's assertion of right to the land is rested solely upon adverse possession, through the right of her hus-

hand (since deceased), without any color of title being shown. Indeed, she testified: "I never had any kind of deed to this land from my sons or from my husband, or from any one else. My husband (deceased) never had any deed that I knew of. I never bought it from any one."

The evidence referring to, or descriptive of, a letter received by plaintiff's husband from one Robinson, who, plaintiff claims and testified, owned the land about 1871, but who was not otherwise shown to have any title thereto, does not tend, in any degree, to show that the husband ever had any color of title to the land in question. Color of title is a writing which in appearance purports to transmit title, or the right of possession, but which in reality does not.—2 Ency. L. & P., pp. 503-506; *Clements v. Hays,* 76 Ala. 280; *Henry v. Brown,* 143 Ala. 446, 39 South. 325.

In such state of the right asserted, the lead to a recovery is restricted to the area actually occupied by the adverse claimant, or those through whom he claims. —*Black v. Tenn. Co.,* 93 Ala. 109, 9 South. 537, among others. When the recovery is thus restricted (unaided by a bona fide claim under color of title, inheritance, or purchase), it is essential that the evidence afford data from which the actual possession of a definite, particular area may be ascertained. It cannot be left to speculation or conjecture.—*McDaniel v. Tenn. Co.,* 153 Ala. 493, 45 South. 159; *Chastang v. Chastang,* 141 Ala. 451, 459, 37 South. 799, 109 Am. St. Rep. 45.

The evidence here has been carefully examined with reference to this principle, and the conclusion it requires cannot be distinguished, in substance, from that prevailing, on a very similar state of fact, in *McDaniel v. Tenn. Co., supra.* There are indicia of actual possession of a part or parts of the 40, but there is an absence

of evidence from which the jury could have found the possessio pedis of a definite, particular piece or area within that sued for. A very small part of the 40 was cleared. The other was wood land. The occupancy about the spring may have been of "3 acres" inclosed, but the evidence does not indicate, in any fashion, the particular form of this fractional (of the 40) area, or with certainty where it lay with reference to the other part of the 40. To undertake to lay the line of this "3 acres" by the evidence would be wholly vain. The cutting of firewood, etc., from the 40 is not shown to have substantially covered, in the operations, the entire 40. When it is considered that the husband of plaintiff owned six other 40's, some of which attinged this one in question on at least two sides, and that there was extreme uncertainty as to the knowledge of plaintiff and of her witnesses of the exact lines bounding the 40 in question, it is clear the evidence is insufficient to afford any basis for a particular finding of the definite area actually occupied (if so) by the plaintiff or by those through whom she would trace her right. On this account the defendant was entitled to the affirmative charge requested by him.

If plaintiff's husband had acquired title to the 40, or any definite part of it, by adverse possession previous to his demise, the plaintiff as his widow, would be entitled to maintain ejectment for such lands, provided they were so related to the place of his last residence as to make them the subject of the widow's quarantine right.—*Clancy v. Stephens,* 92 Ala. 577, 9 South. 522, 524; *Callahan v. Nelson,* 128 Ala. 671, 29 South. 535; *Hays v. Lemoine,* 156 Ala. 465, 47 South. 97; 18 Cyc. 378. According to the undisputed evidence admitted on the trial, the 40 in question was entered, in 1858, by one Jett Traweek; that John Bowles, the father of the de-

fendant, bought the 40 from Traweek in 1860; that Jett Traweek made a deed to John Bowles to said 40, which his widow (Frances C. Bowles) had seen; that this deed was acknowledged before Berry, a justice of the peace; that said deed, which was not recorded, was destroyed about 1880, when John Bowles' home burned; that Berry died some years since; that Frances C. Bowles is the mother of the defendant, and that defend- ant and Mary J. Berry, J. M. Bowles, Martha C. Harkey, Jeremiah S. Bowles, and Malisa E. Woods were all the children born to Frances C. and John Bowles. It was further shown, without dispute, that John Bowles went into possession in 1860 of the 40 under this deed from Traweek. The defendant offered in evidence a deed to defendant, describing the 40 in controversy, purporting to have been executed November 20, 1893, by the widow of John Bowles (Frances C.) and the several children, brothers and sisters of defendant, above named. On the theory that this instrument was without acknowledgment by any of its signors except Frances C., the plaintiff taking the objection, the "court allowed the introduction of said deed as evidence of color of title merely, and not as conveying the legal title." The acknowledgment, which appears to immediately follow the signature on the instrument, is in the following words: "The State of Alabama, Fayette County, I, Henry Brasher, a Justice of the Peace, hereby certify that Frances C. Bowles her heirs whose names is signed to the foregoing conveyance, and who is known to me acknowledged before me this day, that being informed of the contents of this conveyance they executed the same voluntarily on the day the same bears date. Given under my hand, this 20 day of November, 1893. Henry Brasher (J. P.)."

The names of those purporting to be grantors are not set out in the body of the instrument. The pronoun "me" is employed in the acknowledgment of the receipt of payment of the consideration, viz., $1, and the pronoun "I" is employed in the granting clause, as well as with respect to the warranty, etc., feature of the instrument. According to the accepted principles and authority of *Madden v. Floyd,* 69 Ala. 221; *Dinkins v. Latham,* 154 Ala. 100, 45 South. 60, and *S.-S. S. & I. Co. v. Lollar,* 170 Ala. 239, 54 South. 279, among others, the identity of the persons purporting to grant and convey in this instance is clear and certain. They were and are those whose names appear at the appropriate place for the execution of such instruments.

Now as to the acknowledgment. Literal compliance with the form provided for that purpose is not exacted. Substantial compliance is required. The intent in the construction of acknowledgments is to the liberal, not the rigid, though in so doing the courts will not disregard the substantial requirements of the statutes. And in construing an acknowledgment, it will be read in connection with the deed and the deed in connection with it.—*Sharpe v. Orme,* 61 Ala. 263; *Davis v. Gerson,* 153 Ala. 503, 45 South. 587; *Leech v. Karthaus,* 141 Ala. 509, 37 South. 696; *Frederick v. Wilcox,* 119 Ala. 355, 24 South. 582, 72 Am. St. Rep. 925; 1 Ency. L. & P. pp. 878, 881-886; 1 Cyc. pp. 581-584.

If, without resort to mere inference or conjecture, what was intended to be expressed can be clearly seen, errors of a purely clerical or grammatical nature will not avoid the certificate.—1 Ency. L. & P. pp. 885, 886, and notes; 1 Am. & Eng. Ency. Law, pp. 547 et seq.; 1 Cyc., pp. 582-584.

Aside from the grammatical mistake evinced in this acknowledgment, by the use of "is" when "are" was

the verb the context required, it is evident that the point of objection taken to the certificate, and sustained by the ruling of the court, was that it did not show who, other than Frances C. Bowles, were acknowledgors of the instrument; that the others, who purported to be grantors, were not shown by the certificate to have made acknowledgments of their execution of the instrument. There can be no doubt that it is essential that such a certificate show who acknowledged the instrument of which the certificate is a part. The solution of the controlling question in this connection must be had by a construction, in this respect, of the certificate. The question, in one respect, is similar in principle to that elaborately considered and decided in *Doe ex dem. Hughes v. Wilkinson,* 25 Ala. 453. Under that authority evidence was admissible, and of course, in consequence, to be considered in the premises, to the effect that the persons, other than Frances C. Bowles, whose names appear as signors of the instrument of November 20, 1893, were all of the children, except J. L. Bowles, to whom it reads, born to John Bowles (then deceased) and Frances C. Bowles. In the light of this explanatory fact the words "her heirs," appearing in the certificate of acknowledgement, describe the children of that union, and 'her heirs" is to be referred, and refers, to those persons signing the instrument, who were children of John and Frances C. Bowles.—*S.-S. S. & I. Co. v. Lollar,* 170 Ala. 239, 247, 54 South. 272. Such evidence, leading legitimately to that result, is in aid of interpretation, and does not impinge the rule against the admissibility of direct parol evidence to show intention.—35 Ala., pp. 462-466. When the certificate is so interpreted it is evident that its only fault, in the pertinent particular, lies in the omission of the conjunctive "and" between "Bowles" and "her." Manifestly such an omission,

clearly clerical, should not be accorded the effect to destroy the certificate and defeat the conveyance to a major degree, notwithstanding a view and consideration, which must be taken, of the instrument proper, of its signors and of their relation to Frances C. Bowles and to John Bowles, and of the use of the plural names and the certification that "they" executed the same voluntarily.

The reasoning of the New York Court, in *Smith v. Boyd,* 101 N. Y. 472, 5 N. E. 319, touching a matter involving a similar principle, may be read with profit in this connection. *Threadgill v. Bickerstaff,* 7 Tex. Civ. App. 406, 26 S. W. 739, pertains to acknowledgments of a materially different verbiage from that under consideration.

Our conclusion, on this matter, is therefore that the conveyance of November 20, 1893, to J. L. Bowles was valid, and transmitted to the grantees such title as was then vested in the grantors in that conveyance.

So on this transcript it must be ruled that defendant possessed title to the 40 in question, unless plaintiff's husband had acquired, by adverse possession, title to the 40 or to a part thereof. Charges 2 and 7 were hence erroneously given upon plaintiff's request.

Since the plaintiff's right to the possession (if so) is not sought to be predicated of the conditions set down in Code (1896), section 1541 (act approved February 11, 1893), [Laws 1892-93, p. 478], that statute applies to her claim of title by adverse possession; and, if adverse possession was not perfected before the act of 1893 became effective, and, if there was no written declaration filed as that act required, she was restricted to proof of a perfected adverse possession prior to the going into effect of the act of 1893.—*Bowling v. M. & M. Ry. Co.,* 128 Ala. 550, 29 South. 584; *Brasher v.*

[Howard v. Martin.]

*Shelby Iron Co.,* 144 Ala. 659, 40 South. 80. Charges 6 and 9 were in consequence erroneously given upon plaintiff's request.

Charge 1 was erroneously given at plaintiff's instance. When referred to the evidence, as must be done, it was manifestly calculated to mislead the jury. It omitted to hypothesize that the possession was exclusive. The fact that actual possession was hypothesized did not so minimize the misleading character of the charge as to avoid affirmative error and put the defendant to an explanatory instruction. Actual possession, continuous and under claim of right or claim of ownership, for 25 or 30 years is still not adverse possession unless it is exclusive.

The judgment is reversed, and the cause is remanded.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.