172 So. 611

## GARRETT v. FIRST NAT. BANK OF MONTGOMERY et al.

### 3 Div. 190.

Supreme Court of Alabama.

Feb. 18, 1937.

Steiner, Crum & Weil, Sam Rice Baker, and Benj. Hardeman, guardian ad litem, all of Montgomery, for appellees..

Geo. T. Garrett, of Montgomery, for appellant.

BOULDIN, Justice.

The ultimate aim or purpose of the suit is to reclaim the estate of Frank B. Garrett, complainant, bequeathed to him by the will of his mother, Mary Barnes Garrett, deceased, and now held by the First National Bank of Montgomery under a trust agreement.

The appeal is from an interlocutory decree sustaining demurrers to the bill as amended.

By her will, the mother bequeathed the estate in question, stocks and bonds of the approximate value of $50,000, to James M. Garrett, her husband, father of complainant, in trust for the use of her only son, and heir, said Frank B. Garrett, to be managed and reinvested so as to produce the best income consistent with safety; such income or corpus, if necessary, to be used for the maintenance and education of the son, then seventeen years of age, and, if necessary, for the maintenance of the husband during his life. The will provided that the property, or so much as should remain, be turned over to the son as his own on his arrival at twenty-one years of age, or as soon thereafter as his father should deem it proper for him to assume control of same.

The husband was named executor of the will and testamentary guardian of their son; was relieved from making bond, and from making any report of his trust to any court.

On the probate of the will, and grant of letters testamentary, James M. Garrett, individually, and as executor and trustee of the wife's estate, and as guardian of the son, turned over this estate to the First National Bank of Montgomery, trustee, under a trust agreement of date April 9, 1930.

By this agreement the said trustee was given the management and control of the securities with full power of disposition and reinvestment as the trustee should deem to the best interest of the trust. The agreement stipulated this trust shall be irrevocable.

Commencing September 1, 1930, it was stipulated there should be paid to the trustor the sum of $250 per month throughout his natural life. On his death before the son arrived at twenty-one years of age, the son was to be paid $150 per month, or so much more as necessary for his education and support, until his arrival at twenty-one years of age. Thereafter the entire net income could be paid to the son at the discretion of the trustee.

Paragraph V reads: "This Trust shall terminate and the principal, as well as all undistributed accumulations thereon, shall be turned over by the Trustee to Frank Barnes Garrett upon his reaching thirty-five years of age, provided (a) that at that time, in the opinion of the Trustee, he is capable of managing this estate, and further provided (b) that, in the opinion of the Trustee, there shall be no further or legal objections to the termination of said trust estate. In the event, in the

opinion of the Trustee, either (a) or (b) exists as a reason for the continuation of this trust estate, then it shall continue until, in the opinion of the Trustee, both provisos (a) and (b) shall have ceased to exist."

Paragraph VIII reads:

"Should said Frank Barnes Garrett die during the life of this Trust with issue, same shall be continued for such issue, share and share alike, the net income therefrom to be used by the Trustee in its discretion for the support, maintenance and education of such issue, final settlement of the principal to be made upon arrival at the age of twenty-one years respectively.

"Should said Frank Barnes Garrett die during the life of this Trust leaving a wife surviving him and at the time of his death, living with him, but without issue, one-half of the principal shall be paid to his said wife and the balance shall go to his surviving half brothers and half sisters, the child or children of a deceased child to take the parent's share. Should said Frank Barnes Garrett die without issue leaving no wife, the entire trust shall go to his surviving half brothers and half sisters, share and share alike, the child or children of a deceased child to take the parent's share."

Certain other discretionary powers, not necessary to enumerate, were given the trustee. A yearly compensation was stipulated for the trustee's services.

Frank B. Garrett, the beneficiary under the will, arrived at the age of eighteen years August 2, 1930. Promptly thereafter James M. Garrett, the father, proceeding under Code, § 8280, obtained a decree removing the son's disabilities of nonage.

Thereupon, August 15, 1930, a written agreement was entered into between Frank B. Garrett and First National Bank of Montgomery reciting the prior execution of the trust agreement, the removal of disabilities of nonage, and that thereupon Frank B. Garrett ratified and confirmed the trust agreement in all things as if made by him with full capacity in the first instance.

The half-brothers and sisters referred to in the trust agreement are three brothers and one sister, issue of a former marriage of the father. The brothers are living and of full age. The sister, Myrtle Garrett Watson, now deceased, left four children, two of whom are adults and two minors.

The original bill, filed June 16, 1936, sought a revocation of the trust. It averred the foregoing facts, that Frank B. Garrett is fully capable of managing his estate; that the trustee refuses to turn over the fund because of contingent interests of beneficiaries, who are minors, and whose interests the trustee should protect. The father of Frank B. Garrett, his wife, his half-brothers, and adult children of the deceased sister all joined with Frank B. Garrett as cocomplainants. The minor children of the deceased sister, and First National Bank of Montgomery were made respondents.

Demurrers to this bill, filed by the bank and guardian ad litem for the infant respondents, were sustained.

As last amended, Frank B. Garrett was made sole complainant. All the next of kin, father, half-brothers, children of the deceased sister, and children of the living half-brothers, also the wife of complainant, were made respondents. All the adult next of kin and the wife of complainant filed a joint answer admitting the averments of the amended bill, and consenting to the relief prayed.

The respondent bank and the guardian ad litem for the infant respondents filed separate demurrers to the amended bill as a whole and to its several aspects. These demurrers were all severally sustained, and from that decree this appeal is taken.

Proceeding to a consideration of the equities of the amended bill, and the demurrers thereto, we note this amended bill seeks to set aside the trust agreement and have the estate now in the trustee's possession turned over to Frank B. Garrett, as the owner under his mother's will.

The grounds alleged are in effect that the trustor and trustee were without lawful authority to enter into such agreement for two reasons: (a) The trustor, thereby, sought to delegate the discretionary powers, personal in their nature, which had been conferred upon him by the will of the testator. (b) The trust agreement undertook to divest the complainant of the character of estate bequeathed to him by the will, debase an absolute estate into a conditional or defeasible estate, dependent on complainant's continuance in life until thirty-five years of age, and until a trustee, not named by the testator, should

consider him capable of managing his estate; and in creating and limiting on the estate of complainant contingent estates not named in the will; and in postponing his possession and enjoyment of complainant's estate far beyond the date specified in the will. Therefore, it is alleged, the rightful continuance of this trust turns on the agreement of complainant, ratifying and confirming the trust agreement in toto.

■ That the will conferred upon the husband, father of complainant, active duties and discretionary powers touching the testamentary trust, which could not be delegated to a stranger, is not subject to serious debate. Gaines v. Dahlin et al., 228 Ala. 484, 154 So. 101.

■ That the trust agreement undertook to greatly qualify, deplete, and reduce the absolute estate bequeathed to complainant under his mother's will, and to postpone the possession and enjoyment thereof, is equally manifest on a reading of the provisions of the two instruments.

It follows the validity of the trust agreement must turn on the binding force of the agreement directly between complainant and the bank ratifying and confirming the declaration of trust theretofore made by his father.

Passing over the feature of the bill attacking the validity of the decree removing complainant's disabilities of nonage, we consider the averments challenging the ratifying agreement on the ground of undue influence. Eliminating the intermingled averments touching the invalidity of the nonage proceedings, and viewing the averments of undue influence from the viewpoint of a young man with the full legal capacity of twenty-one years of age, we find averments to this effect: That complainant lived in the home of his father, was dependent upon him for support, had no experience in business affairs, looked to his father for advice, had no outside counsel, indeed had never read his mother's will and did not know the purport of the trust instrument which he was asked to ratify, but acted upon the assurance from his father that it was in the nature of a gift or benevolent provision the father was making for the son. It further appears that this estate had just been left by his mother in the keeping of his father, with wide discretion. It is alleged that the ratifying agreement was drawn by representatives of the bank. On its face, it sets forth none of the terms of the trust agreement, carried no intimation of the marked difference between his estate as defined in the will of his mother, and that declared in the trust instrument. It is averred complainant had received none of the monthly payments of $250 to his father, that his father had no necessity for any portion of this fund at any time for his own maintenance. In connection with these averments, it is charged the ratifying instrument was executed under the undue influence and parental duress of his father, and also under the undue influence of the bank.

■ Undue influence on the part of named persons may be alleged in general terms.

■ If the facts are given on which such averment is made as a conclusion, these facts must be sufficient, if proven, to justify a finding of undue influence.

In applying these rules here, the nature of the trust deed must be considered.

Without question the contingent estates created by the trust instrument, as well as the benefits accruing to the father above and beyond those specified in the will, were pure gratuities, gifts of the donor's estate, the corpus, as well as income. They partake of the nature of gifts inter vivos in that the donor is deprived of the possession, disposition, use, and enjoyment of his estate in his lifetime. None of these property rights remained in him during the long period before arrival at thirty-five years of age, and in case of his death before that event, his right to dispose of his own was completely cut off.

■ In dealing with the question of undue influence on the part of James M. Garrett, father of complainant, Frank B. Garrett, a clear case of confidential relations accompanied with a trust in the dominant party is presented. All the obligations of a trustee to protect the estate of the beneficiary obtain in the premises.

The son was asked to confirm what his father had already done in the supposed execution of the trust. The father is presumed under the facts alleged to have been the dominant party, and this status is directly alleged. With all these elements present, there appears a typical case in which a presumption of undue influence arises.

The burden is on those deriving benefits in the nature of a gift, derogating the estate of the donor, to rebut this presumption. This, by proof that the donor had the benefit of competent, independent advice, or other evidence removing the imputation of undue influence.

The bill, as last amended, makes a case of undue influence. Cooley v. Stringfellow, 164 Ala. 460, 51 So. 321; Hutcheson v. Bibb et al., etc., 142 Ala. 586, 38 So. 754; Worsham et al. v. Johnson, 231 Ala. 265, 164 So. 381; Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; Davis v. Wachter, 224 Ala. 306, 140 So. 361; De-Freese et al. v. Vanderford et ux., 220 Ala. 360, 125 So. 328; Raney v. Raney, 216 Ala. 30, 112 So. 313; Lewis et al. v. Martin, 210 Ala. 401, 98 So. 635.

■ It was not necessary that any representative of the bank should have exercised any undue influence, nor stood in any relation of confidence, prior to the execution of the trust instrument. By the instrument itself, its relation was that of a trustee, not a beneficiary. The dominant equities are those of the beneficial owners of the property. The bank fully recognizes this, requests in brief that its position on appeal be treated as that of amicus curiæ, seeking to protect the interests of contingent beneficiaries under the instrument, namely, the infant children of the half-brothers and of the deceased half-sister of complainant. These are represented also by guardian ad litem.

■ The amended bill is challenged by demurrer on the ground that it is a complete departure from the purposes of the original bill.

The original and amended bills have the same parties, except that the amended bill adds parties supposed to have some contingent interests in the same subject-matter growing out of the same transaction. The subject-matter is the same, the property rights of complainant under his mother's will. They involve the same transaction, evidenced by the same instruments, the mother's will, the trust agreement, and the ratifying agreement. Both the original and amended bills seek to vacate the two latter instruments. The ultimate purpose of both is to restore to complainant his properties, with the absolute title, possession, and enjoyment, defined in the will of his mother.

The departure is asserted on the ground of inconsistency and repugnancy between the averments of the original and amended bills, and the form of relief sought.

The original bill proceeded on the assumption that the trust agreement and ratifying agreement were valid, and sought a revocation. The amended bill challenges their validity and seeks to avoid same for undue influence. Under early decisions, this was considered a departure.

But following a legislative policy to avoid multiplicity of suits, and the defense of the statute of limitations growing out of mistaken theories of law or fact on the part of the pleader, the established rule is now different.

Formerly, if the averments and prayers of the original and amended bills here considered had been joined in the alternative, the bill would probably have been held multifarious.

To illustrate, a bill attacking a conveyance for fraud as against creditors, praying that it be canceled, etc., coupled with alternative averments to the effect that it was a general assignment and praying that it be enforced as a valid instrument was held to be multifarious, because inconsistent and repugnant, and calling for different relief. Green & Gay et al. v. Wright, Williams & Wadley et al., 160 Ala. 476, 49 So. 320.

But by the Code of 1907, a former statute was amended by adding: "A bill is not multifarious which seeks alternative or inconsistent relief growing out of the same subject-matter, or founded on the same contract or transaction, or relating to the same property between the same parties." Code § 6526 (3095).

In Smith v. Young, 173 Ala. 190, 197, 198, 55 So. 425, 427, it was held this statute changed the rule announced in Green & Gay et al. v. Wright, Williams & Wadley et al., supra, and to authorize a bill "which seeks alternative reliefs, though inconsistent, if they be founded upon the same transaction and grow out of the same subject-matter, and are contested between the same parties." Such is now the well-settled rule. Green et al. v. First Nat. Bank of Jacksonville, 224 Ala. 47, 138 So. 550; James Supply Co. et al. v. Frost et al., 214 Ala. 226, 107 So. 57; May v. Mathers, post, p. 654, 172 So. 907.

Amendments in equity pleading have been provided for by statute of much longer standing, saying: "Amendments to bills in equity may be filed as a matter of

474

right at any time before final decree, by striking out, or adding new parties, or to meet any state of evidence which will authorize relief." Code, § 6558. This statute, even before the adoption of the statute above permitting inconsistent theories of law and fact to be set up in the alternative, was construed liberally.

"In Ingraham v. Foster, 31 Ala. 132, it was said: 'To make an amendment improper, it is not enough that there be a mere inconsistency, or repugnancy of allegation; there must be an inconsistency or repugnancy of the purposes of the bill, as contradistinguished from a modification of the relief. One of the purposes of a chancery amendment is to correct an erroneous statement of the facts.'" Ex parte Delpey, 188 Ala. 449, 452, 66 So. 22, 23.

Again in Fite, Porter & Co. v. Kennamer, 90 Ala. 470, 473, 7 So. 920, 921: "New matter or a new claim may be introduced entitling complainant to additional or different relief from that specially prayed in the original bill, if it is not repugnant to its prayer and purpose."

The rule permitting amendments has always been regarded quite as liberal, if not more so, than the joinder of inconsistent theories in the alternative.

It would not seem subject to question that matters which may be set up in the alternative in an original bill may be brought in by amendment.

An amendment does not depart from the purpose of the original bill if it seeks to adjudicate property rights in the same property between the same parties. This is the obvious effect of Code, § 6526. Amendments presenting a different version of the facts, calling for application of different legal principles, and molding of relief in different form, are not objectionable so long as the ultimate objective is sought—a decree declaring the equities of the same parties in the same properties growing out of the same transaction.

The amended bill was, therefore, not a departure from the original cause of action. Ex parte Delpey, 188 Ala. 449, 66 So. 22; Sloss-Sheffield S. & I. Co. v. McLaughlin, 182 Ala. 266, 62 So. 96; Bentley et al. v. Barnes, 171 Ala. 512, 55 So. 130; Harton et. al. v. Amason, 200 Ala. 595, 76 So. 953; Rudulph v. Burgin et al., 219 Ala. 461, 122 So. 432; Moseley v. Ritter et al., 226 Ala. 673, 148 So. 139; Rowe et al. v. Bank of New Brockton, 207 Ala. 384, 92 So. 643; Horst v. Barret, 213 Ala. 173, 104 So. 530.

■ Both original and amended bills seek relief under the Declaratory Judgment Statute (Code Supp.1936, § 7881 (1) et seq.), and also under general equity powers. The bill has equity under the general jurisdiction of courts of equity touching trusts and equitable estates. What we have written on the subject of departure applies to the bill invoking this jurisdiction.

■ The bill is further challenged by demurrer for laches.

By the terms of his mother's will, complainant was not entitled to the possession and control of his estate until he was twenty-one years of age, and such time thereafter as his father should consider him capable of managing same. Complainant arrived at twenty-one years, of age in August, 1933. The bill was filed in June, 1936. The record discloses that James M. Garrett, complainant's father, considered him capable of handling his estate when the bill was filed.

Indeed, sensible of the injustice which, probably unwittingly, had been done his son, Frank, in connection with his estate derived from his mother, the father became an actor joining in the original bill seeking to right such wrong. Frank could, without fault, await a reasonable time at least after arriving at twenty-one years of age for his father's approval of his fitness to take over his estate.

Laches, short of the statute of limitations, often depends on elements of estoppel, such as permitting the other party to change his position for the worse, relying upon the status quo. Now, these contingent interests, quite remote in time, could not possibly be prejudiced by the delay in filing the bill.

The bill makes no charge against the bank for mismanagement while the funds have been held under the trust agreement, and seeks no accounting for the sums paid over to the father thereunder. The aim appears to be to have a decree declaring Frank entitled to his estate, and have it turned over to him as now existing in the hands of the trustee. If other relief was sought involving the management since Frank came of age and with his full knowledge, a different question might be presented as to laches.

As for the equities of the bill and direct relief sought, it does not disclose laches on the part of complainant.

The trial court's decree did not conform to these views.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.