46 So.2d 218

**RUFFIN et al. v. CROWELL et al.**

**CROWELL v. RUFFIN et al.**

**2 Div. 272.**

Supreme Court of Alabama.

March 23, 1950.

Rehearing Denied May 18, 1950.

Adams & Gillmore, of Grove Hill, for appellees and cross-appellant.

Vincent F. Kilborn, of Mobile, for appellant and cross-appellees.

FOSTER, Justice.

This suit comes here in two aspects. Appellants in the main appeal were complainants added by amendment to the original bill in the trial court. The appeal by them is from a decree holding that they are not entitled to relief.

The original bill was filed December 23, 1942 by Jeff Crowell and his wife, Vaddie, and so far as material here the facts developed in the case are substantially as follows. Marion Crowell, Sr., a Negro resident of Choctaw County, died in 1933 leaving nine children or their descendants and 900 acres of land, upon which he had given a mortgage to one John Green. Soon after his death Jonh Green began foreclosure proceedings and the heirs of Marion Crowell, deceased, or some of them, undertook to do something about it. They were Jeff Crowell, Marion Crowell, Jr. (referred to throughout the proceedings as Dock) and Clara Ruffin. On February 14, 1935, those three heirs with their respective spouses executed a mortgage to the Chatom State Bank on the land purporting to convey all interests in it, not merely their respective interests. On July 28, 1936, Dock and his wife, Odessa, executed another mortgage to the same bank on the same land and, on October 6, 1936, Jeff and Dock, and their respective wives, executed still another mortgage on the land to the Chatom State Bank. Upon the basis of that security, they obtained funds with which to pay and did pay the Green mortgage. Those mortgages to the bank were not paid when due and the bank; on May 27, 1939, filed suit to foreclose them and made as parties to that suit the mortgagors in said mortgages together with some, but not all, of the other heirs of the estate.

Prior to that time, and on October 6, 1936, Jeff gave a deed to his wife, Vaddie, conveying to her his interest in the land. Pending the foreclosure suit by the bank and, on August 14, 1939, Jeff and his wife, Vaddie, gave a deed to Odessa, who was Dock's wife, purporting to convey their interests in the land, which was then one-ninth. Dock also deeded his interest to his wife, Odessa.

The foreclosure suit proceeded to a final decree, resulting in a sale of the land in foreclosure of the mortgage and the purchase of it by the Chatom State Bank receiving a deed dated September 2, 1941. The decree found that the mortgage debt to the Chatom bank was incurred on behalf of all the cotenants to redeem the land from the Green mortgage and that the Chatom bank mortgage covered all interests of the cotenants in it. They all seem to have accepted that result, for there is no claim made by them on a different theory. On September 27, 1941, Odessa Crowell, the wife of Dock, received a deed from said bank conveying to her said property. Soon thereafter she and her husband sold some of the land and some of the timber and made a mortgage to the Choctaw Bank of Butler. At the time of the purchase of said land by Odessa she had received a deed from Dock and Jeff and Vaddie conveying their interests in the land to her, and was therefore a cotenant with the heirs, although she was not an heir. At that time Jeff had conveyed what interest he had first to his wife, Vaddie, and then by deed from them both to Odessa, so that at the time she received a deed from the Chatom State Bank Jeff had no interest in the land as an heir. Later two of the heirs, Mollie White and Clara Ruffin, conveyed their interest (one-ninth each) to Jeff. This was in October 1942.

As we have said, the present bill was filed by Jeff and his wife, Vaddie, December 23, 1942, making as parties Dock and his wife, Odessa. The purpose of the bill was to be allowed to participate with

Odessa as tenants in common in the purchase by her of the outstanding title from the Chatom State Bank. None of the other heirs sought to exercise that right at that time. The suit came on for hearing and decree. On February 2, 1947, a decree was rendered dismissing the bill, but on motion for rehearing that decree was set aside and the bill was then amended by adding as complainants the present appellants. They were first added simply as complainants without specification of their claim. On February 15, 1948, a substituted, rewritten bill was filed, taking the place of the original bill, and in it the present appellants, as added complainants, sought to exercise a similar right to that sought by Jeff and Vaddie in the original bill. The remaining heirs were made respondents and they seek no relief. The bill then sought a sale for division also. On February 21, 1949, a final decree was entered and, so far as immediate purposes are concerned, denied relief to the present appellants. The theory upon which that denial was predicated was that their claim as tenants in common to participate in the purchase which Odessa had made while she was likewise a tenant in common was barred by limitations on the theory that the original bill filed by Jeff and Vaddie did not prevent the principle of limitations from running against these appellants, and that limitations did run against them until they were made parties complainant and elected then for the first time to exercise such right.

So that the question presented on the main appeal is whether or not these appellants waited too long before declaring an election to exercise the right conferred upon them in equity to share in that purchase made by Odessa, and that is influenced by the question of whether the amendment whereby that right was for the first time asserted by them related back to the filing of the original bill.

There are several principles of law which are proper to be reviewed to ascertain the nature of a cotenant's interest, here material, and the forms of remedies open to him, and we will undertake to state them as follows:

When an inheritance descends to several persons, they take as tenants in common. Section 9, Title 16, Code; Gore v. Gore, 250 Ala. 417, 34 So.2d 580; Hill v. Jones, 65 Ala. 214, 220. When one joint tenant dies before a severance, his interest does not survive to the other joint tenants, but descends and vests as if his interest had been severed and ascertained. Section 19, Title 47, Code; Gore v. Gore, supra. Tenants in common hold by several and distinct title, but by unity of possession. Hood v. Johnston, 210 Ala. 617, 99 So. 75; Thompson v. Mawhinney, 17 Ala. 362, 368, 52 Am.Dec. 176; Shepard v. Mt. Vernon Lumber Co., 192 Ala. 322, 326, 68 So. 880, 15 A.L.R. 23; Warner v. Warner, 248 Ala. 556(8), 28 So.2d 701.

In an action for injuries to the *possession* they should all join, not sever. But there are causes of action in which they may sever and when they sever the recovery is only for the interest of the tenant suing. Pruitt v. Ellington, 59 Ala. 454; Holder v. Elmwood Corp., 231 Ala. 411(6), 165 So. 235; Southern Railway v. Hayes, 198 Ala. 601(9), 73 So. 945. For an injury to the property the remedy is severable. Some may join, but all need not. The recovery is for the interest of those suing. Lowery v. Rowland, 104 Ala. 420, 16 So. 88; Wood v. Montgomery, 60 Ala. 500. For an interest in money due under an implied contract, one may sue. Gore v. Gore, supra; Smith v. Wiley, 22 Ala. 396, 58 Am.Dec. 262. Also one may sue for his proportionate part of an amount due for use and occupation. Wood v. Montgomery, supra. When there has been a conversion of the personalty owned by tenants in common, they may sue jointly or severally either for the tort or on the implied promise for money had and received. Gore v. Gore, supra. A tenant in common can release or waive or transfer his interest without affecting the rights of others. Gore v. Gore, supra, Syl. (10). The right of cotenants to sue under circumstances stated above is joint and several. Gore v. Gore, supra, 250 Ala. at page 420, 34 So.2d 580. As against a stranger, one or more less than all, may recover the whole of the realty and the recovery inures

658

to the benefit of all. Jackson Lumber Co. v. Butler, 244 Ala. 348, 13 So.2d 294.

### Amendments in Actions at Law.

 Section 239, Title 7, Code, authorizes, in actions at law the addition of parties plaintiff and defendant by amendment, but provides that amendments relate back to the commencement of the suit only when they relate to the same transaction, property, title and parties as the original. But a suit against one person cannot stop the running of a statute against another who is brought in by amendment. Spurling v. Fillinghim, 244 Ala. 172, 12 So.2d 740(4); Haynes v. Phillips, 211 Ala. 37(3), 99 So. 356; Roth v. Scruggs, 214 Ala. 32(7), 106 So. 182.

### Amendments in Suits in Equity.

Rule 28(d) of Equity Practice allows an amendment by striking out or adding new parties, and the same rule (f) provides that such amendments shall relate back and become a part of the bill amended as fully as though the amendment had been incorporated in the bill when filed. Rule 43 of Chancery Practice, Code of 1923, provided that when an amendment is allowed, it shall be considered as introduced into the bill from the time of its allowance. (This extended back through several Codes.) The Act of September 22, 1915, page 705, section 3, General Acts 1915, provides that it shall not be necessary to obtain an order allowing an amendment in equity, but when filed it shall relate back and become a part of the bill as fully as though it had been incorporated in the bill when filed. That Act became section 6560, Code of 1923, and is the same as Equity Rule 28(f), supra. That rule has also superseded Rule 43 of the Code of 1923. The subject was completely covered by Rule 28 of Equity Practice, Code of 1940, Tit. 7 Appendix.

At a time when an act of the legislature authorized any amendment to be allowed which may become necessary, with no provision that it shall relate back, this Court held in King v. Avery, 37 Ala. 169, that such an amendment could not bring in a complainant at a time when his right had become barred by limitations, holding that when a new claim is introduced by adding a new complainant, there was no lis pendens as to that matter between the parties, and the limitations ran against it until the amendment was filed. Also in the same case it was held that when no new matter was introduced, but the amendment varies the allegations as to a subject already in issue, it is subject to the lis pendens, and the statute does not run after the bill was first filed. Winston v. Mitchell, 93 Ala. 554(5), 9 So. 551. In Wilson v. Holt, 91 Ala. 204, 8 So. 794, complainant sought to establish a trust in land; new parties defendant were added who had the legal title. The statute was held to run as to them until they were brought in.

The only case we find subsequent to the Act of 1915, supra, is the case of Barnett v. Dowdy, 207 Ala. 641, 93 So. 638, which seems to bear upon the question. The bill was filed by a mortgagee of land who had pledged the mortgage to Hicks. Hicks had foreclosed the pledge and bought in the security without authority, and then foreclosed the mortgage under the power of sale. Within two years the pledgor, who was also the mortgagee, filed a bill to set aside both foreclosures because the pledgee Hicks bought the pledged mortgage at his own sale without authority. Hicks had mortgaged the land to a bank after the purchase by him. The bill made the bank a party, also J. E. Barnett and Lum Tucker. The report of the case does not show why they were made parties. The opinion states that the original bill filed within two years to set aside the sale was in due time by analogy. Later it was amended by striking out J. E. Barnett as defendant, adding J. G. Barnett and J. W. Brown, without alleging their connection with the transaction. They demurred to the bill which was overruled and they appeal. The opinion states that the bill does not show that they were necessary parties, but the demurrer does not raise that point and it was waived. The demurrer insisted on was that more than two years elapsed from the time the right arose before they were made parties. The Court held that under the Act of 1915, supra, the amendment related back

to the date of the filing of the bill. The bill as amended did not show their connection with the transaction and what their claim was or when it arose, or why they were made parties. It was simply claimed that they could not be made parties after two years from the date of the foreclosure regardless of what the nature of their claim was, or how it arose or whether they had a claim. It was observed that if those parties are subsequent innocent purchasers and as such entitled to protection, they cannot be availed of by demurrer to the bill, but it must be set up by other proper pleading. The demurrer was overruled by the trial court and affirmed on appeal. That meant that the bill did not show on its face that whatever claim it may set up against J. G. Barnett and J. W. Brown was barred by limitations. It did not state that if they bought the land from Hicks before the suit was filed and that complainant had notice of their claim, and did not sue them or make them parties until after two years had expired, their claim could be asserted by amending the bill and to relate back to the date of the institution of the suit, though it was barred when they were made parties. No such situation was presented by the bill as thus amended. So that the case is not an authority on the question here presented.

■ The Act of 1915, supra, as now contained in Rule 28, supra, is general in its application to all amendments to both bill and answer. It is not simply with reference to one which adds parties complainant or respondent. We do not think it should have reference to all sorts of amendments so as to make them relate back to the date of the filing of the bill. We are not willing to say that an amendment could bring in a complainant and have him assert a claim against respondent after such claim had been barred by limitations when it was not within the *lis pendens* of the suit as originally filed. True that was the status before the Act of 1915, supra, as held in King v. Avery, supra. We do not think it expedient to give expression to a construction of the statute and rule except insofar as it applies to the instant situation.

But we think it did not intend to change the rule laid down in King v. Avery, supra. As said in that case, if the amendment brings up matter which varies the allegations as to a subject already in issue within the *lis pendens,* the statute does not run after the bill is filed. See, Garrett v. First National Bank, 233 Ala. 467, 172 So. 611; King v. McAnnally, 234 Ala. 479, 175 So. 546; McGowin v. McGowin, 232 Ala. 601, 169 So. 232.

### Limitations Here Applicable.

■■ Our problem is therefore to determine whether a claim by tenants in common, other than the original complainants, to be allowed to share in the purchase of property by Odessa Crowell, is within the *lis pendens* of the suit by the original complainants on their own account to have that relief. Their bill does not purport to be on behalf of the other tenants in common, and does not offer them an opportunity to come in and obtain similar relief on their own account. The bill was filed December 23, 1942, by Jeff and Vaddie Crowell against Odessa Crowell and her husband, Marion Crowell, Jr. (called Dock). An amendment was made first bringing in some of these appellants as complainants on September 16, 1947. Others were made complainants February 13, 1948. On February 15, 1948, the bill was rewritten which sets up the claims of the added complainants. So they did not come in until five or six years after the original bill was filed. Odessa acquired a deed to the land from the bank on September 27, 1941. It is in this deed that complainants seek to obtain benefits. That was six to seven years before these appellants joined in the suit. The trial court refused to grant them relief. Their right is dependent upon whether their claim became barred before they asserted it. When Odessa bought the land from the bank, it was for the benefit of the other heirs of Marion Crowell, Sr., who then held their rights as such heirs, provided within a "reasonable time thereafter they elect to contribute and reinstate their title." Under ordinary circumstances two years is a reasonable time in which to do so. Savage

v. Bradley, 149 Ala. 169, 43 So. 20, 123 Am.St.Rep. 30; Randolph v. Vails, 180 Ala. 82(7), 60 So. 159; Williams v. Massie, 212 Ala. 389, 102 So. 611; Winsett v. Winsett, 203 Ala. 373, 83 So. 117; Gilb v. O'Neill, 225 Ala. 92, 142 So. 397, 85 A.L.R. 1526; Bailey v. Bond, 237 Ala. 59, 185 So. 411; Penny v. Penny, 247 Ala. 434, 24 So. 2d 912.

■ It is clear that each tenant in common has a severable right; but there is such community of interest as would enable them all to join in one suit. Each could as well maintain a separate suit. The right of each is dependent upon his personal election and steps taken by him individually to secure it. Each could waive or sell his right to another subject to the same conditions and limitations. It is not statutory, but equitable where alone it is recognized. A suit by one does not create a *lis pendens* including the right of another. It is not a class action for the benefit of all of that class and not embraced in Equity Rule 30 or 31, nor the principle of virtual representation. Ussery v. Darrow, 238 Ala. 67, 188 So. 885. The amendment brought in a claim not within the *lis pendens* and did not relate back.

■ The question of delay here is not based on the principle of laches, which has well defined standards. But equity has by analogy applied the period of two years which is fixed by law in which to exercise the statutory right of redemption. This period applies in ordinary cases of this sort. For it not to apply there must be some circumstances which make it inequitable. That is not shown here as to these appellants. They abandoned all effort to raise the money to pay the bank after a failure to obtain a loan from the Federal Land Bank and after the Chatom bank filed suit to foreclose. Odessa and Dock alone pursued the matter without the aid of any of the others, and after they had apparently abandoned all hope of succeeding. The circumstances were in no respect sufficient to extend the period ordinarily applicable. There was nothing extraordinary which tended to lift the period so declared for ordinary situations.

■ As a result of the foregoing discussion, we find ourselves in accord with that feature of the final decree of the trial court which denied relief to appellants on the main appeal, and it is to that extent affirmed.

### Cross Appeal.

Odessa Crowell has taken a cross appeal and made cross assignments of error and as a basis of her claim she sets out the following facts, some of which have already been referred to.

We have heretofore stated that on August 14, 1939, Jeff and Vaddie executed a deed, which was a quit claim deed, conveying the property in question to Odessa. Prior to that time and, on October 6, 1936, Jeff had executed a conveyance to his wife, Vaddie, conveying to her his interest as an heir of the estate, so that the deed from Jeff and Vaddie to Odessa, on August 14, 1939, purported to convey the one-ninth undivided interest which Jeff had previously conveyed to Vaddie.

The original bill sets up a claim by Jeff and Vaddie to the effect that it was not intended by said deed to pass that interest to Odessa, but it was merely intended for the title to be in Odessa, along with the other deeds that had been made to her in order to enable her to obtain a loan from the Federal Land Bank to satisfy the debt to the Chatom State Bank. Whereas, Odessa claimed that the inspiration of that deed was the determination of Jeff and Vaddie not to make further effort to satisfy the debt to the Chatom State Bank which loaned the money to pay Green, but to release and relinquish their claim so that Odessa and Dock could take such steps as they saw fit to that end.

The trial court concluded that the deed in question was not subject to attack on that account, and Jeff and Vaddie have not appealed nor assigned errors. So that, so far as our inquiry is concerned, that deed effectually conveyed their interest to Odessa subject to a further discussion applicable to Vaddie's claim in that connection.

The final decree determined that Jeff had a two-ninths interest at the time of the filing of the bill in this case by reason of

the two deeds executed to him in October 1942 by Mollie White and Clara Ruffin, respectively, each being a child of the original ancestor and inheriting a one-ninth interest.

The final decree also determined that the deed of Jeff and Vaddie on August 14, 1939, did not have the effect of conveying to Odessa the one-ninth interest which Jeff inherited from his father. This was by reason of the court's interpretation of the case of Lindsey Lumber & Export Co. v. Deas, 230 Ala. 447, 161 So. 473. The theory of the court was that in the execution of that deed Vaddie only signed as the wife of Jeff, and that the deed which Jeff had executed to Vaddie not being signed by Vaddie did not have the effect of conveying to her the title to the one-ninth interest.

The court also found and decreed that Odessa, on account of the sale of a part of the land, which the court confirmed, and on account of the sale of timber, which the court confirmed, and the use of the land, had received full contribution, which would otherwise be payable by Jeff and Vaddie as a condition to their equitable right to the two-ninths and one-ninth interest each, respectively.

On this cross appeal by Odessa argument of counsel is to the effect that Jeff and Vaddie are not entitled to the relief which the court granted them or to any relief because they have not come into court with clean hands, and have not kept their hands clean throughout the litigation to such an extent that equity is not available to them. The theory of unclean hands advanced by cross appellant is that they made false allegations both in the bill and in their testimony with respect to the purpose of the deed which they gave to Odessa on August 14, 1939. The court has decreed against them in that respect and they have not assigned it as error. But the principle relied upon by this cross appellant does not meet with favor in this Court.

■ There is no case which we are able to find in this State, and none has been cited to us, in which the principle of unclean hands is applied to a litigant because of false allegations in his bill or because

of false testimony given on the trial of that case. It is unnecessary to cite the various decisions in this Court or to analyze those cited by cross appellant as to the nature of the facts which create unclean hands because those cases all have reference to facts occurring in that respect prior to the filing of the bill. See Lavretta v. First National Bank of Mobile, 235 Ala. 104, 178 So. 3; Weaver v. Pool, 249 Ala. 644, 32 So.2d 765.

We have found one case in this State of Malone v. Carroll, 33 Ala. 191, which touches upon the subject, but that lays down no statement of the principle which will do as a guide. We find some authority in other jurisdictions to the effect that a litigant coming into equity must keep his hands clean throughout the litigation. 30 Corpus Juris Secundum, Equity, § 95, p. 483. We are not inclined to apply that principle to this case, if at all. The application of it here would be to deny relief to Jeff which he might have by reason of the deed executed to him in October 1942, on account of his false claim with reference to the purpose and effect of his deed executed August 14, 1939. We think that the legal and equitable status in that respect simply is that his false claim and possibly his false testimony with reference to his deed to Odessa merely serves to deny him relief in respect to that deed, and when relief is denied him in respect to it the penalty for his false allegation and testimony has been paid and it should not serve to cast him out of court with respect to another transaction as to which there was no false allegation or testimony.

■ The principle of unclean hands is confined to misconduct in regard to the particular matter as to which he is entitled to relief but for such unclean hands, and does not serve to deprive him of relief in respect to some other matter. VanAntwerp v. VanAntwerp, 242 Ala. 92, 5 So. 2d 73; 19 Am.Jur. 327, section 473.

■ We have no trouble therefore in agreeing with the trial court that Jeff should not be deprived of relief in respect to the two-ninths interest which he acquired from Mollie White and Clara Ruffin on account of any principle of unclean

hands. So that insofar as Jeff is concerned, we cannot sustain cross-appellant's contention.

We cannot agree, however, with the trial court in declaring the effect of the case of Lindsey Lumber & Export Co. v. Deas, supra. In that case a deed was involved, which was executed by the husband and wife. The husband owned a part of the property and the wife had no interest in that part, except her dower right which of course was inchoate. Later the wife acquired an interest in it. The contention was made that having executed the deed with her husband with covenants of warranty, the title which she afterwards acquired inured to the benefit of her grantee. The Court denied that claim upon the theory that the facts showed that the wife was not bound by the covenants of warranty as to that interest and, therefore, the principle sought to be applied was not available.

■■■ But that decision does not determine the question of whether or not the deed from Jeff and Vaddie to Odessa dated August 14, 1939, conveyed the one-ninth interest which Jeff had inherited and which he had undertaken to convey to Vaddie on October 6, 1936. The failure of Vaddie to sign the deed from Jeff to her is a circumstance of no importance in respect to the effect of that deed. The husband can convey his land to his wife and pass a perfectly good title whether it is the homestead or not without her signature to the deed as grantor. This would be an anomaly. Wallace v. Feibelman, 179 Ala. 589, 60 So. 290; Turner v. Bernheimer, 95 Ala. 241, 244, 10 So. 750, 36 Am.St. Rep. 207.

■■■ As a result of that principle, after the execution of the deed from Jeff to Vaddie, she was the owner of the one-ninth interest that Jeff had and not the owner merely of a dower interest in it, so that

when the deed of August 14, 1939 was executed by Jeff and Vaddie to Odessa, its effect was to convey said one-ninth interest to Odessa. The fact that the name of neither Jeff nor Vaddie appears in the body of the deed as grantor does not operate to lessen the force and effect of the deed as a conveyance of the title since the deed does not name any of the grantors as such in its body. When that is the situation those who signed the deed as grantors are grantors and effectually convey whatever interest they have when the deed is otherwise properly executed. Sheldon v. Carter, 90 Ala. 380, 8 So. 63; Frederick v. Wilcox, 119 Ala. 355, 24 So. 582, 72 Am. St.Rep. 925; Dinkins v. Lathan, 154 Ala. 90, 45 So. 60; Bowles v. Lowery, 181 Ala. 603, 62 So. 107; Lindsey Lumber & Export Co. v. Deas, supra; St. Clair Springs Hotel v. Balcomb, 215 Ala. 12(6), 108 So. 858.

The decree of the court was therefore in error to the extent that it held that Vaddie had at that time an undivided one-ninth interest in the land.

It follows that on the main appeal the decree of the trial court is affirmed.

On cross appeal the decree is modified so that instead of declaring and adjudging that Vaddie has a one-ninth interest it should have declared and adjudged that Odessa was the owner of that one-ninth interest and that Vaddie had no interest, and so that Jeff has a two-ninths interest and Odessa a seven-ninths interest. As modified the decree is affirmed in all other respects.

The costs of appeal are to be equally divided between appellants and cross-appellant.

Affirmed on the main appeal.

Modified and affirmed on cross-appeal.

BROWN, LAWSON and STAKELY, JJ., concur.